

# J CLARK
## & ASSOCIATES
### ATTORNEYS AT LAW

*jclark@jclarkassociates.com*
*Reply to: MONTCLAIR*

February 18, 2011

**BY FACSIMILE**
Hon. Victor Marrero, U.S.D.J.
United States Courthouse
Chambers Suite 660
500 Pearl St.
New York, NY 10007-1312

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-1-11
```

**Re:    The Louis Berger Group, Inc. v. State Bank of India**
**Docket No.: 1:11-CV-00410-VM**

This office represents plaintiff, The Louis Berger Group, Inc. ("LBG"), in the above referenced action. The following is respectfully submitted in response to Your Honor's February 14, 2011 request that LBG prepare a three-page letter responding to the assertions made by defendant State Bank of India – New York ("SBI-NY") in its letter of February 11, 2011.

In its prior submission, LBG asserted, *inter alia*, that this Honorable Court had jurisdiction over, and was the proper venue for, the instant dispute involving SBI-NY's failure to pay the proceeds of a letter of credit ("LC") to LBG due *solely* to the existence of an Indian court's *ex parte* preliminary injunction. In response, SBI-NY concedes that this Honorable Court has both personal and subject matter jurisdiction and that it is the proper venue for the dispute.

LBG further asserted that this Honorable Court should not extend comity to an Indian court's *ex parte* preliminary injunction, which restrained SBI-NY from paying on the LC. SBI-NY argues that: "this case should be stayed pending ... the outcome of the case in India..." The comity issue appeared to rendered moot when, on February 14, 2011, the Indian court vacated its preliminary injunction. However, LBG understands that an Indian appellate court may have issued an injunction pending appeal there.

Whatever happens in the Indian courts, LBG maintains that the Indian courts have no jurisdiction over an LC issued in NY, made payable in NY and expressly subject to NY law. The argument that a foreign court injunction will not preclude a court sitting in NY from ruling on an LC issued and made payable in NY was successfully advanced by SBI-NY's counsel, Moses & Singer, in both the SDNY and on appeal to the Second Circuit in the matter of *3Com Corp. v. Banco do Brasil, S.A.*, 2 F.Supp.2d 452 (SDNY 1998) *aff'd* 171 F.3d 739 (2nd Cir 1999). There, SBI-NY's counsel argued that a party who participates in the financial industry in NY and accepts both NY law and NY jurisdiction must perform its obligations despite the existence of a foreign court injunction. NY cases where banks were compelled to fulfill their obligations in NY contrary to government decrees in a foreign jurisdiction include *J. Zeevi & Sons, Ltd. v. Grindlays Bank Ltd.*, 37 N.Y.2d 220, 371 N.Y.S.2d 892 (1975), *cert. denied*, 423 U.S. 866 (1975) (Uganda), *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516 (2nd Cir. 1985), *cert. dis.*, 473 U.S. 934 (1985) (Costa Rica), *Cantrade Privatbank AG Zurich v. Bangkok Bank Public Co.*, 256 A.D.2d 11, 681 N.Y.S.2d 21 (1st Dep't 1998) (Thailand) and *Canadian Imperial*

20 Church Street, Suite 15, Montclair, NJ 07042 • T: 973.707.5346 F: 973.707.7631
242 West 36th Street, 9th Floor, New York, NY 10018 • T: 646.720.0433

www.jclarkassociates.com

Hon. Victor Marrero
Page 2 of 4

*Bank of Commerce v. Pamukbank Tas*, 166 *Misc.2d* 647, 632 *N.Y.S.2d* 918 (Sup. Ct. N.Y. Co. 1994) (Turkey). *All Service Exportacao, Importacao Comercio, S.A. v. Banco Bamerindus do Brazil, S.A.*, 921 *F*.2d 32, 36 (2nd Cir. 1990) (despite existence of foreign injunction, bank had to pay on LC issued and made payable in NY). In the case at hand, not only is there an important public policy in enforcing these instruments so that New York maintains its place as a financial center, but also to preserve the integrity of multinational contracts sponsored by governmental agencies such as USAID. Indeed, upon encashment of the LC, LBG will tender the proceeds to USAID to *begin* to mitigate the damages caused by PCL's default of the underlying construction contract.

SBI-NY next argues: "this case should be stayed pending ... the outcome of the arbitration in New Jersey, which will determine the fraud issue that is the key to this case." That position is contrary to well settled law. Counsel for LBG and PCL stated in open court on February 17th that the LC issue is not being adjudicated in the NJ arbitration. Thus, the LC issue is properly before this Honorable Court. *See* UCP Article 3; *Venizelos, S.A. v. Chase Manhattan Bank*, 425 *F*.2d 461, 464-65 (2nd Cir. 1970) ("a letter of credit is independent of the contractual arrangement for which it is the mode of payment"). It is undisputed that the LC does not contain an arbitration clause and that LBG has not consented to arbitrate the issue of non-payment of the LC. *Haviland v. Goldman, Sachs & Co.*, 947 *F*.2d 601, 604 (2nd Cir. 1991), *cert. denied*, 112 *S.Ct.* 1995 (1992) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

In the *3Com Corp.* case cited above, SBI-NY's counsel successfully argued that a claim of fraud in the underlying contract transaction should not prevent payment of an LC. In that case, a bank argued that there was fraud in the transaction and that it therefore should not have to pay on an LC. *3Com Corp., supra* 171 *F*.3d. at 747. The Second Circuit stated that under NY law the fraud doctrine authorizes dishonor only where "a drawdown would amount to an outright fraudulent practice by the beneficiary." *Id.* The Second Circuit stated in *3Com Corp., supra* 171 *F*.3d. at 747 ("a draft is accompanied by a beneficiary's statement that the issuer's customer has materially breached the underlying contract, dishonor is permissible only where the beneficiary's claim of breach is clearly untenable"); *See, e.g., Recon/Optical*, 816 *F*.2d at 858 (draft not fraudulent because "whether or not [the beneficiary's] view of the merits of these disputes is correct, there is no evidence [of] bad faith"); *Ground Air Transfer, Inc. v. Westates Airlines, Inc.*, 899 *F*.2d 1269, 1272-73 (1st Cir. 1990) (draft not fraudulent because claim of default at least "colorable"); *Roman Ceramics Corp. v. Peoples Nat'l Bank*, 714 *F*.2d 1207, 1214 (3d Cir. 1983) (draft fraudulent where claim of nonpayment "has no basis in fact" and thus drawer "has no bona fide claim to payment at all").

In its submission to the Court, PCL cites to the NY UCC's fraud section, § 5-109, for the proposition that an LC can be enjoined from payment when: (1) there is a presentation of fraudulent documents by the beneficiary, or (2) honor of the presentation would facilitate a material fraud by the beneficiary. PCL then cites to the unpublished state court decision of *Nostrum Laboratories, Inc. v. Martec USA, LLC*, 2009 *WL* 6318144 (N.Y. Supp. 2009) in further support of this proposition. The *Nostrum* case dealt with a beneficiary's demand for payment of two letters of credit issued by Bank of India – New York where there had plainly been no breach

of contract triggering the right for payment. The court granted the injunction finding that the party seeking the injunction was likely to succeed on the merits of its claim that there was no default and the beneficiary's claim made in the presentment that it was "due" the amount of the LCs was clearly false when made. Those facts are distinguishable from the case at bar where there is no claim that the documents presented by LBG were false. Similarly, PCL cites to *Hyosung America, Inc. v. Sumagh Textile Co., Ltd.*, 25 F.Supp.2d 376 (SDNY 1998) for the proposition that an applicant claiming fraud can enjoin the payment of an LC. In *Hyosung*, the court found that the beneficiary knowingly falsified documents and presented false documents for payment of the LC. *Id.* at 389. Thus, *Hyosung* is not on point.

Finally, PCL cites to a case decided by the Ohio state supreme court - *Mid-America Tire, Inc. v. PTZ Trading, Ltd.*, 95 Ohio.St.3d 367, 374 & 390 N.E.2d 619, 626 & 639 (2002) - for the proposition that payment of an LC may be enjoined where there is fraud in the inducement to provide the LC. The assertion made by PCL is incorrect. The Ohio court did not rule that payment of the LC could be enjoined because there was fraud in the procurement of the LC. Rather, the Ohio court ruled that payment of the LC could be restrained because there was a material fraud in the inducement to enter into the underlying contract to purchase tires. The *Mid America Tire* case stands for the proposition that in order to obtain an injunction against payment of an LC, the movant must show "fraud that has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation can no longer be served." *Id.* at 390-391. In the instant case, PCL does not claim that the SBI-NY letter of credit should not be paid because LBG presented SBI-NY with fraudulent documents or that LBG fraudulently induced PCL to enter into the underlying construction contracts. Rather, PCL makes the argument that it was fraud for LBG to insist that PCL perform a pre-existing contractual duty to provide a letter of credit – which letter of credit PCL was contractually obligated to provide by no later than July 31, 2009 and which PCL had failed to provide by September 2009. Thus, the dispute is over when the LC was to be provided. That is not fraud. It makes out a breach of contract claim.

PCL's entire argument is that it was fraudulently induced to provide an LC to LBG when LBG had already decided that PCL had breached the underlying construction contract. There are two types of fraud that warrant an injunction. The first, as evidenced by the *Nostrum Laboratories* and *Hyosung America* cases cited by PCL, is where the beneficiary presents fraudulent documents. PCL is not claiming that LBG presented fraudulent documents. The second, as evidenced by the *Mid America Tire* case cited by PCL, is where there is a fraudulent inducement to enter into the underlying goods or services contract. PCL does not claim there was fraud in the inducement to enter into the construction contract. Rather, PCL claims that it was induced into meeting a pre-existing contractual obligation to provide a performance guarantee with a promise that it would be able to cure its prior breaches. LBG disputes that it ever promised that providing an LC would cure all of PCL's material and continuing breaches. And, there is no case that stands for the proposition that inducing one to perform a pre-existing contractual obligation is a fraud that prevents payment of an LC.

For the reasons set forth above, it is respectfully urged that this Honorable Court should Order that SBI-NY pay the proceeds of the LC to LBG.

Hon. Victor Marrero
Page 4 of 4

Respectfully submitted,

John E. Clark (JEC#8138)

cc: David Rabinowitz, Esq. (via email)
Michael E. Avidon, Esq. (via email)
Gregory A. Horowitz, Esq. (via email)
Andrew Anselmi, Esq.

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by _Plaintiff_.

**SO ORDERED.**

2-28-11

DATE          VICTOR MARRERO, U.S.D.J.