Gregory A. Horowitz
Joel M. Taylor
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
Email: ghorowitz@kramerlevin.com
Email: jtaylor@kramerlevin.com

*Attorneys for Proposed Intervenor*
*Progressive Constructions Limited*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x

THE LOUIS BERGER GROUP, INC.,         :   Civil Action No.: 1:11-CV-00410-VM

                Plaintiff,            :

                v.                    :

STATE BANK OF INDIA,                  :

                Defendant,           :

PROGRESSIVE CONSTRUCTIONS LIMITED,    :

                Proposed Intervenor  :

--------------------------------------------------------------- x

# MEMORANDUM OF LAW OF PROGRESSIVE CONSTRUCTIONS LIMITED IN SUPPORT OF ITS MOTION TO INTERVENE AND FOR A STAY OF PROCEEDINGS IN THIS ACTION

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| PROCEDURAL HISTORY | 2 |
| STATEMENT OF FACTS | 5 |
| ARGUMENT | 7 |
| Point I Intervention is Appropriate | 7 |
| A. PCL May Intervene As a Matter of Right under Fed. R. Civ. P. 24(a)(2). | 7 |
| 1. PCL's motion to intervene is timely. | 7 |
| 2. PCL has interests related to the letter of credit transaction. | 8 |
| 3. PCL's interests will be impaired by an unfavorable disposition of this case. | 9 |
| 4. PCL's interests are not otherwise protected. | 10 |
| B. The Court Should Permit PCL to Intervene Pursuant to Fed. R. Civ. P. 24(b)(1)(B). | 10 |
| Point II Proceedings Should Be Stayed Pending Resolution of the Arbitration | 10 |
| Conclusion | 13 |

# TABLE OF AUTHORITIES

## CASES

*Cipriani 200, LLC v. 200 Fifth Avenue Owner, LLC*,
    No. 0602657/2007, 2007 WL 3325862 (N.Y. Sup. Ct. N.Y. Co. Oct. 31, 2007) ............9

*Guetzko v. Keybank Nat'l Assoc.*,
    No. C08-2067, 2009 WL 482130 (N.D. Iowa Feb. 25, 2009)............................8, 9

*Hyosung America, Inc. v. Sumagh Textile Co., Ltd.*,
    25 F. Supp. 2d 376 (S.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999) ..............8

*Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg*,
    No. 92 Civ. 2236 (LLM), 1992 WL 249914 (S.D.N.Y. Sept. 22, 1992)...............11

*Orange Chicken L.L.C. v. Nambe Mills, Inc.*,
    No. 00 Civ. 4730 (AGS), 2000 WL 1858556 (S.D.N.Y. Dec. 19, 2000)..............11

*Sierra Rutile Ltd. v. Katz*,
    937 F.2d 743 (2d Cir. 1991) ...............................................................................11

*Success Universal Ltd. v. CWJ Int'l Trading, Inc.*,
    No. 95 Civ. 10210 (DLC), 1996 WL 535541 (S.D.N.Y. Sept. 20, 1996) ................8

*Summit Resource Group v. JLM Chems., Inc.*,
    No. 4:08-CV-1831 HEA, 2008 WL 5423447 (E.D. Mo. Dec. 29, 2008) ................9

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) ......................................................................................7

## STATUTES & RULES

Fed. R. Civ. P. 24(a)(2)..............................................................................................7

Fed. R. Civ. P. 24(b)(1)(B) ......................................................................................10

N.Y. U.C.C. § 5-109 ..........................................................................................1, 2, 8

## MISCELLANEOUS

E.C. Corbett, A Practical Legal Guide, A Commentary on the International
    Construction Contract (FIFIC 4th Ed. 2008)......................................................12

Proposed Intervenor Progressive Constructions Limited ("PCL") respectfully submits this memorandum of law in further support of (a) its motion pursuant to Federal Rule of Civil Procedure 24(a)(2), or in the alternative 24(b)(1)(B), to intervene in the above-captioned litigation, and (b) its order to show cause why proceedings in this action should not be stayed pending final resolution of the arbitration pending before the American Arbitration Association ("AAA") styled: *Progressive Constructions Limited v. The Louis Berger Group, Inc.* (No. 50 110 T 00673 10) (the "Arbitration").

## PRELIMINARY STATEMENT

It cannot be argued with a straight face that PCL lacks an interest in the letter of credit at issue in this litigation. PCL purchased the letter of credit and will incur an obligation to reimburse the issuer, State Bank of India ("SBI"), any amount that it is ordered to pay thereunder. The Louis Berger Group, Inc. ("LBG") has acknowledged that PCL's interest is protected by § 5-109 of the New York Uniform Commercial Code to the extent payment on the credit would result in a "material fraud" on PCL. While disputing the sufficiency of PCL's § 5-109 claim, LBG does not deny that PCL has a legally protected right to have it adjudicated. Instead, it appears intent on trying to deny PCL any venue in which to have that claim decided.

While arguing to this Court that the parties' letter of credit dispute should not be joined with the Arbitration because the credit is "independent" of the underlying construction contract between PCL and LBG, and is thus not governed by its arbitration clause, LBG has simultaneously argued, successfully, to a court in India that it lacks subject matter jurisdiction to enjoin payment on the letter of credit because the parties' dispute concerning the enforceability of the letter of credit is arbitrable. LBG cannot have it both ways. PCL is indifferent as to whether this Court or an AAA tribunal decides its § 5-109 claim. In either case it is entitled to intervene in this action as a party defendant to protect its interest in having that claim decided

before payment is made on the letter of credit. Accordingly, PCL is prepared to file an Answer to LBG's complaint when responsive pleadings are due or, alternatively, an Answer and Counterclaim pursuant to § 5-109 if this Court is the proper venue to decide that claim, as this Court implicitly concluded in ruling on the merits of PCL's prior application for injunctive relief.

Either way this Court should stay proceedings in this action pending resolution of the Arbitration. If PCL's claim is arbitrable, a stay is warranted as LBG will have no right to payment on the letter of credit if PCL prevails on that claim and § 5-109 specifically protects an applicant's right to intervene in the letter of credit transaction before any payment is made. On the other hand, if PCL's claim is not arbitrable, prudence dictates that this Court should exercise its inherent authority to stay proceedings as the most salient legal and factual predicates on which PCL's claim is based will be decided in the Arbitration. Specifically, the Arbitration will determine whether PCL is correct that: (a) it had no contractual obligation to deliver the letter of credit when LBG demanded that it do so under threat of termination; (b) LBG wrongfully induced it to deliver the letter of credit by making materially false promises concerning its ongoing review of PCL's performance under the construction contract; (c) LBG's engineer breached his duty to exercise his discretion impartially in light of all circumstances; and (d) LBG's failure to honor its promises and contractual obligations deprived PCL of any benefit of its arrangement with LBG.

## PROCEDURAL HISTORY

On November 9, 2009, the City Civil Court of Hyderabad, India issued an interim "Status Quo Order" in aid of arbitration restraining payment on the letter of credit.[1] PCL commenced the Arbitration on October 18, 2010.

---

[1] The Status Quo Order was extended from time to time over LBG's objection by orders dated February 16, 2010, July 1, 2010, November 26, 2010, December 14, 2010, and January 28, 2010. Contrary to LBG's

LBG brought this action on January 20, 2011 and PCL moved to intervene one week later, on January 27, 2011. In a February 3, 2011 letter to the Court LBG argued both that: (a) the present action should not be joined with the Arbitration because the letter of contract is "independent" of the underlying construction contract; and that (b) the Status Quo Order was not entitled to comity because the Hyderabad Court lacked subject matter jurisdiction to enjoin payment on the credit, citing the construction contract's arbitration clause. In its February 11, 2011 letter to this Court, PCL observed that LBG's contention that the Hyderabad Court lacked jurisdiction to issue the injunction was "squarely contrary to LBG's simultaneous assertion that its rights under the letter of credit are wholly independent from the underlying construction contract and therefore not subject to arbitration."

On February 14, 2011, the Hyderabad Court granted an application by LBG to vacate the Status Quo Order on the ground, among others, that the Court lacks subject matter jurisdiction over the dispute because it falls within the scope of the construction contracts' arbitration clause.[2] That same day PCL filed an order to show cause in this Court seeking: (1) permission to intervene in this matter; (2) a preliminary injunction (a) requiring LBG to withdraw its demand on the letter of credit; and (b) enjoining LBG from making any demand on the letter of credit pending final resolution of the Arbitration; and (3) a stay of this matter pending final resolution of the Arbitration.

---

representations to this Court that the injunction was entered "ex parte" and that LBG appeared in the action "only to argue that the Indian court lacks jurisdiction to decide PCL's claim," in fact, as early as December 16, 2009, LBG appeared in the Indian proceedings both to (i) contest the Hyderabad Court's jurisdiction to issue the injunction on the ground that the parties agreed that "disputes of any kind . . . in connection with or arising out of, the contract need to be settled among the parties" by invoking the arbitration clause contained in the construction contract, as well as to (ii) dispute the sufficiency of PCL's fraud allegation.

[2] The Court also found that PCL failed to make a prima facie showing of fraud or irretrievable injury; rulings on the merits of PCL's claim of the kind that LBG previously argued in its February 3 letter to the Court are not entitled to comity because the Court lacked jurisdiction over the dispute and because they were not decided under New York law.

-3-

Through a series of orders dated February 15, 2011, February 18, 2011 and February 21, 2011 the High Court of India issued an interim order enjoining demand or payment on the letter of credit pending resolution of an appeal taken by PCL from the Hyderabad Court's February 14 order.

On February 28, 2011, this Court denied PCL's order to show cause to the extent it sought a preliminary injunction for "the reasons stated on the record" at a February 17, 2011 hearing on that application. The record reflects that the Court gave the following reason for that ruling: "The question of the status of the proceedings in India as the parties have acknowledged remains cloudy at best and that issue bears very materially on what this Court could probably do in this case. To the extent that there is uncertainty and ambiguity and that matters could go either way, I don't see that it would be prudent for this Court at this point to issue any injunctive relief requested at least until that matter of the status of the India proceeding is sorted out." (Tr. 21). The Court reserved ruling on PCL's applications to intervene and to stay proceedings in this action.

On March 7, 2011, in light of the Hyderabad Court's February 14 determination (issued by written opinion and order on February 28) that disputes concerning the enforceability of the letter of credit are arbitrable, PCL amended its demand for arbitration to include a claim seeking to enjoin LBG from demanding payment on the letter of credit.

PCL's appeal from the Hyderabad Court's February 14 order is pending "part heard" before the High Court.

## STATEMENT OF FACTS

As this Court is already familiar with the factual bases of PCL's § 5-109 claim, which are set forth with supporting evidence in its papers in support of its February 14 order to show cause, PCL provides the following summary of those facts:

In April 2009, PCL and LBG executed an agreement (the "Agreement") for the construction of a segment of road in Southern Sudan as part of a United States Agency for International Development ("USAID") project. The Agreement consists of a number of documents including a form of contract developed by the Federation Internationale Des Ingenieurs-Conseils ("FIDIC"), as well as a letter of acceptance sent by LBG to PCL informing it that LBG had accepted PCL's bid to perform the contract (the "Letter of Acceptance"). The Agreement specifies that the Letter of Acceptance takes precedence over the FIDIC contract for purposes of interpreting the Agreement as a whole.

In the months following the execution of the Agreement LBG's engineer issued a series of so-called "Rate of Progress" letters notifying PCL of his purported opinion that PCL's rate of progress on the project was "too slow" and identifying certain supposed delays in performance, including PCL's having not provided LBG with performance security. On August 17, 2009, LBG's designated "Representative," Andrew Bailey, sent PCL a letter informing it that the engineer's previous Rate of Progress letters could be a "precursor to termination" and demanding that PCL commit to a date by which it would deliver the requested performance security.

On September 9, 2009, LBG's engineer sent Mr. Bailey a letter certifying that in his opinion PCL was in default under the Agreement, citing among other things PCL's having not provided LBG with performance security. The next day Mr. Bailey sent PCL a so-called "Notice to Cure" letter advising PCL that if it failed to provide LBG with performance security

-5-

by September 18, 2009, LBG would declare a default under the Agreement and demand payment on a "Bid Bond" that PCL delivered in connection with its original bid for the work.

PCL had no obligation to provide LBG with the performance security demanded by Mr. Bailey because no submission of an initial interim progress payment was ever made under the Agreement. The Letter of Acceptance specifies that performance security is only due "*Prior to the submission of the initial interim Progress Payment.*" Sub-Clause 10.1 of the Conditions of Particular Application likewise specifies that the provision of performance security is a "condition precedent" to the submission of an initial interim progress payment. Until such submission was made PCL had no obligation to provide LBG with performance security.

On September 18, 2009, PCL's Founder, K.S. Rao, met with Mr. Bailey at LBG's offices in Washington D.C. to discuss PCL's performance under the Agreement. During that meeting Mr. Bailey assured Mr. Rao that LBG remained committed to the Agreement, and promised that LBG would fairly consider PCL's progress under a revised work program that would enable the project to be completed on schedule, provided that PCL deliver the performance security demanded in his Notice to Cure.

The following week, after making repeated demands for delivery of the letter of credit, LBG flew one of its representatives to India to take possession of the letter of credit. PCL turned over the letter of credit to LBG in reliance on Mr. Bailey's promises, believing that if it opened the letter of credit, LBG would honor those promises and fairly evaluate PCL's performance under a revised work program. Almost immediately after taking receipt of the letter of credit LBG issued a Notice of Default declaring PCL in default of the Agreement and notifying PCL that "the Employer, may, after 14 days from the issue of this notice, enter upon the Site and expel PCL."

On October 12, 2009, PCL submitted to LBG a revised work program designed in consultation with LBG and USAID to ensure timely completion of the contract. Eight days later, LBG's engineer sent a letter to Mr. Bailey advising that in his opinion PCL remained in default under the Agreement. In addition to other infirmities in that opinion, none of the bases cited by the engineer took into consideration the revised work program that Mr. Bailey promised would be used to evaluate PCL's ongoing performance. On October 21, 2009, the engineer sent a letter to LBG certifying his purported opinion that PCL was in default under the Agreement. That same day LBG sent PCL a letter giving it fourteen day's notice of its intention to enter upon the site and expel PCL. Two weeks later LBG's security contractor forcibly expelled PCL's personnel from the construction site. PCL never requested, and LBG never paid, an initial interim progress payment, or any other consideration, under the Agreement.

## ARGUMENT

### Point I

### Intervention Is Appropriate

**A. PCL May Intervene As a Matter of Right under Fed. R. Civ. P. 24(a)(2).**

In order to intervene as a matter of right under Rule 24(a)(2), an applicant must (1) file timely, (2) demonstrate an interest relating to the property or transaction which is the subject of the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise protected. *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994). Each of those elements is satisfied here.

**1. PCL's motion to intervene is timely.**

PCL's motion is timely because it was served on all parties and filed with the clerk on January 27, 2011, within seven days of LBG filing its complaint. Neither of the existing parties is prejudiced by the timing of PCL's motion.

### 2.     PCL has interests related to the letter of credit transaction.

As aptly observed by this Court during the February 17 hearing on PCL's order to show cause, it is a "common sense proposition that if [LBG] sues on a letter of credit the party that is the subject of the underlying obligation on the letter of credit has a sufficient interest" to intervene in the action. (Tr. 9). That proposition follows from the simple fact that the purchaser of a letter of credit will suffer "immediate and definite" harm if the credit is honored because it will incur an obligation to reimburse the issuer for any funds paid. *Hyosung America, Inc. v. Sumagh Textile Co., Ltd.*, 25 F. Supp. 2d 376, 384 (S.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999) (observing that the issuer's role in a letter of credit transaction is that of a financial intermediary and that the true "party at risk" is the purchaser of the letter of credit). Section 5-109 protects an applicant's interest in enjoining payment on a letter of credit where, as here, doing so will result in a "material fraud" on the applicant. N.Y. U.C.C. § 5-109; *Success Universal Ltd. v. CWJ Int'l Trading, Inc.*, No. 95 Civ. 10210 (DLC), 1996 WL 535541, at *4 (S.D.N.Y. Sept. 20, 1996) (the U.C.C. grants applicants a right to "intervene in the separate letter of credit contract between the bank and the beneficiary" and to "seek to enjoin the bank from honoring the demand for payment."). That interest, in having the validity of the letter of credit determined before any payment is made, is sufficient to entitle an applicant to intervene in an action seeking to enforce the credit. *See, e.g., Guetzko v. Keybank Nat'l Assoc.*, No. C08-2067, 2009 WL 482130, at *4 (N.D. Iowa Feb. 25, 2009) ("As an 'applicant' on the letter of credit, [the proposed intervenor] has an interest in a declaratory action to determine the validity of the letter of credit").

As discussed in PCL's papers in support of its order to show cause, honoring a presentation of the letter of credit would result in a material fraud on PCL because: (a) LBG fraudulently induced PCL to procure the letter of credit by making materially false promises

-8-

concerning its review of PCL's ongoing performance under the Agreement and (b) LBG's engineer breached his contractual duty to exercise his discretion impartially and in light of all circumstances when he (i) falsely certified that PCL was in default of its obligation to provide LBG with performance security, and (ii) failed to fairly evaluate PCL's performance under its revised work program; and (c) LBG's improper conduct destroyed any value its arrangement with PCL had to PCL.

### 3. PCL's interests will be impaired by an unfavorable disposition of this case.

An adverse disposition in this case would impair PCL's interest in avoiding the "direct and immediate" injury that will result if the letter of credit is honored, as well as PCL's related interest in having its § 5-109 claim decided before any payment is made on the credit. *Guetzko*, 2009 WL 482130, at *4 (an adverse disposition of a case determining the validity of a letter of credit would impair an applicant's interest in that action). An adverse disposition would also impair PCL's related interest in avoiding the negative credit implications that demand or payment on the letter of credit would have on its business; an interest which has been recognized to warrant the granting of preliminary injunctive relief under the Uniform Commercial Code. *Cipriani 200, LLC v. 200 Fifth Avenue Owner, LLC*, No. 0602657/2007, 2007 WL 3325862 (N.Y. Sup. Ct. N.Y. Co. Oct. 31, 2007) (irreparable harm found where the applicant's obligation to restore amounts drawn on a letter of credit would threaten its creditworthiness and goodwill); *Summit Resource Group v. JLM Chems., Inc.*, No. 4:08-CV-1831 HEA, 2008 WL 5423447, at *3 (E.D. Mo. Dec. 29, 2008) (irreparable harm found where demand on a letter of credit would cause the applicant to "be unable to secure sufficient lines of credit to continue as a going concern.").

KL3 2821166.1

4.  **PCL's interests are not otherwise protected.**

No current party in this matter will adequately represent PCL's interests. LBG is clearly not an adequate representative as its interests are directly adverse to those of PCL. SBI is not an adequate representative because it has no meaningful stake in the outcome of the litigation given PCL's reimbursement obligation and because, unlike PCL, it has no ability or apparent inclination to prove PCL's "material fraud" claim.

B.  **The Court Should Permit PCL to Intervene Pursuant to Fed. R. Civ. P. 24(b)(1)(B).**

Even if PCL does not have a right to intervene in this action, the Court should permit PCL to intervene because it has claims and defenses that share common issues of law and fact with the main action. If it is permitted to intervene, PCL intends to argue that SBI had, and continues to have, a right to refuse any demand made by LBG on the ground that it was enjoined from doing so by the injunction issued by the Hyderabad Court and continues to be so enjoined by the High Court's injunction. PCL also intends to argue that, even absent the Indian injunctions, SBI had, and has, no obligation or right to honor any demand by LBG because doing so would result in a material fraud on PCL. In addition, by this application, PCL contends, as SBI did in its February 11 letter to this Court, that proceedings in this matter should be stayed pending the resolution of the Arbitration.

**Point II**

**Proceedings Should Be Stayed
Pending Resolution of the Arbitration**

Regardless of whether PCL's § 5-109 claim is arbitrable, this Court should stay proceedings pending resolution of the Arbitration because the parties' respective rights under the letter of credit will be readily ascertainable upon completion of the Arbitration, as well as for reasons of judicial economy and avoidance of inconsistent judgments; the latter prudential reason

KL3 2821366.1

having already been implicated by LBG's inconsistent positions, and decisions rendered thereon, with respect to the arbitrability of disputes concerning the enforceability of the letter of credit. It is well established in this Circuit that a district court may stay a proceeding in favor of an arbitration in which issues involved in the case may be determined. *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991) ("It is appropriate, as an exercise of the district court's inherent powers, to grant a stay "'where the pending proceeding is an arbitration in which issues involved in the case may be determined.'" (quoting *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964)); *Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, No. 00 Civ. 4730 (AGS), 2000 WL 1858556, at *9 (S.D.N.Y. Dec. 19, 2000) (stay appropriate where "the claims in the instant action and those being adjudicated in arbitration arise out of the same series of alleged acts"); *Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg*, No. 92 Civ. 2236 (LLM), 1992 WL 249914, at *2 (S.D.N.Y. Sept. 22, 1992) ("courts in this district have consistently granted stays pending arbitration where the nonarbitrable issues overlap the arbitrable issues, thus minimizing inconsistent results and conserving judicial resources.").

Here, all of the most salient legal and factual predicates on which PCL's claim is based will be decided in the Arbitration. Specifically, the Arbitration will determine whether PCL is correct that: (a) it had no contractual obligation to deliver the letter of credit when LBG demanded that it do so under threat of termination; (b) LBG wrongfully induced it to deliver the letter of credit by making materially false promises concerning its ongoing review of PCL's performance under the construction contract; (c) LBG's engineer breached his duty to exercise his discretion impartially in light of all circumstances; and (d) LBG's failure to honor its promises and contractual obligations deprived PCL of any benefit of its arrangement with LBG.

LBG will not be prejudiced by a stay. The Arbitration will almost certainly conclude before this Court would ever reach the merits of LBG's claims in this action. Moreover, LBG appears to believe that disputes concerning the enforceability of the letter of credit are arbitrable. It successfully argued in the Indian proceeding that the Court lacked subject matter jurisdiction to grant injunctive relief because the dispute falls within the scope of the arbitration clause. That position is consistent with guidance provided by FIDIC, which has advised that the terms of the arbitration clause "are wide enough in principal to cover a dispute over a bond and the financial consequences of a call upon it." E.C. Corbett, A Practical Legal Guide, A Commentary on the International Construction Contract (FIDIC 4th Ed. 2008). Given LBG's apparent belief that disputes concerning the letter of credit's enforceability are arbitrable, it cannot claim to be prejudiced by a stay of proceedings in this action pending resolution of the Arbitration, whether this Court or an AAA tribunal ultimately decides PCL's § 5-109 claim.

### Conclusion

For all of the foregoing reasons, PCL respectfully requests that the Court: (a) grant PCL's motion to intervene; and (b) stay all proceedings in this matter pending resolution of the Arbitration.

Dated: New York, New York
       March 18, 2011

Respectfully submitted,

KRAMER LEVIN NAFTALIS
& FRANKEL LLP

By: _____
Gregory A. Horowitz
Joel M. Taylor

1177 Avenue of the Americas
New York, New York  10036
(212) 715-9100
Email: ghorowitz@kramerlevin.com
Email: jtaylor@kramerlevin.com

*Attorneys for Proposed Intervenor*
*Progressive Constructions Limited*

KL3 2821166.1