**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **THE LOUIS BERGER GROUP, INC.**, | Civil Action No.: 1:11-CV-00410-VM |
| *Plaintiff,* | |
| v. | |
| **STATE BANK OF INDIA**, | |
| *Defendant.* | |

**MEMORANDUM OF LAW OF PLAINTIFF, THE LOUIS BERGER GROUP, INC.
IN OPPOSITION TO THE MOTION TO INTERVENE AND STAY
FILED BY PROGRESSIVE CONSTRUCTIONS LIMITED**

J CLARK & ASSOCIATES, LLC
John E. Clark, Esq. (JEC #8138)
20 Church Street, Suite 15
Montclair, N.J. 07042
(973)-707-5346
jclark@jclarkassociates.com

McCUSKER, ANSELMI, ROSEN & CARVELLI, P.C.
Andrew E. Anselmi, Esq. (AEA #1768)
210 Park Ave., Suite 301
Florham Park, N.J. 07932
(973) 635-6300
aanselmi@marc-law.com

Attorneys for Plaintiff, The Louis Berger Group, Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

PROCEDURAL HISTORY ................................................................................................. 5

LEGAL ARGUMENT .......................................................................................................... 8

   I.  PCL MAY NOT INTERVENE PURSUANT TO EITHER F.R.C.P. 24(A) OR
      24(B) ............................................................................................................................ 8

      A. PCL'S MOTION TO INTERVENE IS PROCEDURALLY DEFICIENT .................. 8

      B. PCL CANNOT ESTABLISH THAT IT HAS AN INTEREST IN THE LC
         THAT WILL BE IMPAIRED IF INTERVENTION IS DENIED .............................. 8

      C. PCL CANNOT ESTABLISH THAT ITS INTERESTS ARE NOT
         ADEQUATELY REPRESENTED ............................................................................ 13

      D. THE PERFORMANCE OF A PRE-EXISTING CONTRACTUAL DUTY
         CANNOT BE THE BASIS FOR A CLAIM OF FRAUD AND LBG HAD A
         COLORABLE CLAIM TO DECLARE PCL IN BREACH AND EXPEL IT
         FORM THE PROJECT ............................................................................................ 14

      E. PCL IS NOT ENTITLED TO PERMISSIVE INTERVENTION .............................. 17

      F. THE NON-FINAL INDIAN COURT INJUNCTION IS NOT ENTITLED TO
         COMITY ................................................................................................................. 18

      G. THIS ACTION CONCERNIG THE PAYMENT OF AN LC SHOULD NOT
         BE STAYED PENDING ARBITRATION OF THE UNDERLYING
         CONSTRUCTION CONTRACT FOR WHICH THE LC PROVIDES
         SECURITY ............................................................................................................. 19

CONCLUSION ..................................................................................................................... 24

# TABLE OF AUTHORITIES

## Statutes

9 *U.S.C.* § 4 ...........................................................................................................20

*N.Y.U.C.C.* § 5-103 (McKinney 2005) ....................................................12, 21, 22

## Rules

*F.R.C.P.* 9(b) ......................................................................................................8, 15

*F.R.C.P.* 24 ...................................................................................8, 9, 11, 13, 14, 17

## Cases

*3Com Corp. v. Banco do Brasil, S.A.*, 2 *F.Supp.*2d 452 (S.D.N.Y. 1998) *aff'd* 171 *F.*3d 739 (2nd Cir 1999) ........................................................................................18

*3Com Corp. v. Banco de Brasil, S.A.*, 171 *F.*3d 739 (2nd Cir. 1999) ..................12, 22

*Abramson v. Pennwood Inv. Corp.*, 392 *F.*2d 759, 761 (2nd Cir. 1987) ..............8, 15

*Alaska Textile,* 982 *F.*2d at 815 ......................................................................9, 10

*All Service Exportacao, Importacao Cercio, SA v. Banco Bamerinindus Do Brazil, SA*, 921 *F.*2d 32, 35-36 (2nd Cir. 1990) ............................................12, 19, 20

*Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 *F.*2d 516 (2nd Cir. 1985), *cert. dis.*, 473 *U.S.* 934 (1985) ....................................................................19

*Art Capital Partners, Lp v Tyco Acquisition Corp. Xviii, 2010*, 71 *A.D.*3d 1404, 1406 (4th Dep. 2010) ..............................................................................................15

*Banco Nacional de Mexico, SA v. Grupo Financiero Banamex*, 34 *A.D.*3d 124, 130-131 (1st Dep. 2006). ........................................................17, 18, 19, 20, 22

*Bank of China v. Chan*, 937 *F.*2d 780, 786 (2d Cir. 1991) .............................21, 22

*Bank of Cochin Ltd. v. Manufacturers Hanover Trust Co.*, 612 *F.Supp.* 1533, 1537 (S.D.N.Y. 1985), *aff'd*, 808 *F.*2d 209 (2d Cir. 1986) .....................................25

*Banque Worms v. Banque Commerciale Privee*, 679 *F.Supp.* 1173, 1182 (S.D.N.Y. 1988). ...................................................................................................16

*Barleo Homes v. Tudomawr Corp.*, 214 *A.D.*2d 694 (2nd Dep. 1995) .....................23

*Boa v. Gruntal & Co.*, 942 *F.Supp.* 978, 983 (D.N.J. 1996) ..................................20

*Brenntag Int't Chemicals, Inc. v Bank of India*, 70 *F.Supp.*2d 399, 405 (S.D.N.Y. 1999) ......................................................................................................24

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 *N.Y*.2d 314, 336, 451 *N.E*.2d 459, 464 *N.Y.S*.2d 712 (1983) ................................................................. 11

*Cauble v. Mabon Nugent & Co*., 594 *F.Supp*. 985, 993 (S.D.N.Y. 1984) .................... 15

*Canadian Imperial Bank of Commerce v. Pamukbank Tas*, 166 *Misc.2d* 647, 632 *N.Y.S*.2d 918 (Sup. Ct. N.Y. Co. 1994) ..................................................................... 19

*Cantrade Privatbank AG Zurich v. Bangkok Bank Public Co*., 256 *A.D*.2d 11, 681 *N.Y.S*.2d 21 (1st Dep't 1998) ................................................................................... 19

*Centrifugal Casting Machine Co. v. American Bank & Trust Co.,* 966 *F*.2d 1348, 1352 (10th Cir. 1992) ............................................................................................... 10

*Chelsey Originals, Inc. v. D&Art, Inc*., 1992 U.S. Dist. LEXIS 10486 **11-13 (S.D.N.Y.) ............................................................................................................... 15

*Cooperative Agricole Groupement De Producteurs Bovins De L'Ouest v. Banesto Banking Corp., 1989 U.S. Dist. LEXIS 8368*, No. 86 Civ. 8921 (PKL), 1989 WL 82454, at *2 (S.D.N.Y. July 19, 1989), *aff'd*, 904 *F*.2d 35 (2d Cir. 1990) ................. 25

*Dulien Steel Products, Inc. of Washington v. Bankers Trust Co*., 298 *F*.2d 836, 841 (2nd Cir. 1962) ................................................................................................... 21

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co*., 66 *N.Y*.2d 38, 44-45, 485 *N.E*.2d 208, 495 *N.Y.S*.2d 1 (1985) ........................................................................ 11

*Farmland Dairies v. Commissioner of New York State Dep't of Agriculture*, 847 *F*.2d 1038, 1044 (2nd Cir. 1988) ............................................................................. 17

*Fox v. Glickman Corp.*, 355 *F*.2d 161, 163 (2nd Cir. 1965) ....................................... 11

*Ground Air Transfer, Inc. v. Westates Airlines, Inc*., 899 *F*.2d 1269, 1271-1272 (1st Cir. 1990) ......................................................................................... 12, 16, 22

*Haviland v. Goldman, Sachs & Co.,* 947 *F*.2d 601, 604 (2nd Cir. 1991), *cert. denied*, 112 *S.Ct*. 1995 (1992) ................................................................................. 21

*Ionian Shipping Co. v. British Law Ins. Co*., 426 *F*.2d 186, 190-191 (2nd Cir. 1970) ....................................................................................................................... 14

*In re Lustron Corp*., 184 *F*.2d 798, 802 (7th Cir. 1950) *cert. den.* 340 *U.S*. 946 .......... 16

*Itek Corp. v. First National Bank of Boston*, 730 *F*.2d 19, 25 (1st Cir. 1984) .............. 16

*J. Zeevi & Sons, Ltd. v. Grindlays Bank Ltd*., 37 *N.Y*.2d 220, 371 *N.Y.S*.2d 892 (1975), *cert. denied*, 423 *U.S*. 866 (1975) .............................................................. 19

*Jones v. New York Div. of Military & Naval Affairs,* 166 *F*.3d 45, 50 (2nd Cir. 1998) ....................................................................................................................... 16

*Marine Associates v. New Suffolk Dev. Corp*., 125 *A.D*.2d 649, 652 (2nd Dep. 1986) ...................................................................................................................... 23

*Mastercard Int'lm Inc. v. Visa Int'l Serv. Ass'n,* 471 *F*.3d 377, 389 (2nd Cir. 2006) .................... 11

*Mendel v. Henry Phipps Plaza West, Inc*., 6 *N.Y*.3d 783, 786, 844 *N.E*.2d 748, 811 *N.Y.S*.2d 294 (2006) ............................................................................................. 11

*Mennen v. v. J.P. Morgan & Co.*, 229 *A.D.*2d 237, 241 (4th Dep. 1997) *aff'd* 91 *N.Y.*2d 13 ........................................................................................................11, 14, 18, 20

*Meridian Homes Corp. v. Nicholas W. Prassas & Co.,* 683 *F.*2d 201 (7th Cir. 1982) ........................................................................................................................10, 13

*Midland Walwyn Capital Inc. v. Spear, Leeds & Kellog*, 1992 U.S. Dist. LEXIS 14289 ...................................................................................................................................23

*Mumford Cove Assoc. v. Town of Groton*, 786 *F.*2d 530, 535 (2nd Cir. 1986).............................17

*New York News, Inc. v. Kheel*, 972 *F.*2d 482, 485 (2nd Cir. 1992) ..........................................9

*Orange Chicken, LLC v. Nambe Mills, Inc.,* 2000 *U.S. Dist. LEXIS* 18214 (S.D.N.Y.) ......................................................................................................................23

*QAI, Inc. v. Sprint Communs., Co.*, 120 *F.Supp.*2d 1218 (C.D. Cal. 2000) ................................20

*Rockwell Int'l Systems, Inc. v. Citibank, N.A.,* 719 *F.*2d 583, 587 (2nd Cir. 1983) .......................10

*Semetex Corp. v. UBAF Arab American Bank*, 853 *F.Supp.* 759, 769-770 (S.D.N.Y. 1994)..........................................................................................................10

*Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 *F.*2d 675, 679 (2nd Cir. 1989)...................11

*Shea v. Angulo*, 19 *F.*3d 343, 347 (7th Cir. 1994) ........................................................14

*Sierra Rutile Ltd. V. Katz*, 937 *F.*2d 743 (2nd Cir. 1991) ...............................................23

*Smoot v. Mobil Oil Corp.*, 722 *F.Supp.* 849, 859-860 (D.Mass. 1989) ....................................10

*United States v. Hooker Chems. & Plastics Corp.*, 749 *F.*2d 968 (2nd Cir. 1984)........................13

*United States v. State of New York*, 820 *F.*2d. 554, 556 (2nd Cir. 1987).................................9

*Venizelos, S.A. v. Chase Manhattan Bank*, 425 *F.*2d 461, 464-65 (2nd Cir. 1970)...........12, 20, 22

*Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.,* 707 *F.*2d 680, 682 (2nd Cir. 1983) .........................................................................................................10

*Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 782, *F.Supp.* 870, 875 (S.D.N.Y. 1991) .........................................................................................8

*Wood v. R.R. Donnelley & Sons Co.,* 888 *F.*2d 313, 318 (3rd Cir. 1989) ..................................10

## Other

7C Wright *et al., Federal Practice & Procedure* § 1913, at 385 (2d ed. 1986)................12, 14, 18

UCP art. 2.......................................................................................................................9

UCP art. 3.....................................................................................................10, 12, 21, 22

UCP art. 4.....................................................................................................................10

## PRELIMINARY STATEMENT

Plaintiff, The Louis Berger Group, Inc. ("LBG"), brought this action against State Bank of India – New York ("SBI-NY") because SBI-NY refused to pay LBG on a letter of credit (the "LC") issued by SBI-NY despite LBG's presentment and demand for payment. The LC served as security for the performance of a construction contract by Progressive Constructions Limited ("PCL"), an Indian company. SBI-NY denied payment of the LC due solely to a preliminary, non-final injunction obtained *ex parte* by PCL from a trial court in India. The Indian trial court recently addressed the merits of PCL's claims and both dismissed the action and its injunction. PCL then ran to an Indian appellate court and obtained another *ex parte,* non-final injunction.

There is no factual dispute concerning the LC. It was issued in New York, made payable in New York and was expressly made subject to New York law. Likewise, there is no dispute that LBG made a conforming presentation of documents for the payment of the LC. PCL seeks to intervene alleging, among other things, that the Indian appellate court's non-final injunction should be afforded comity. This presents a question of law to be determined by this Court and requires no discovery. As a matter of well settled law, a foreign court's preliminary order enjoining payment of an LC issued in New York, payable in New York and subject to New York law is not entitled to comity. Therefore, PCL should not be permitted to intervene so that it may assert a meritless claim for comity.

PCL next asserts that it should be permitted to intervene because it has an "interest" in the LC. That assertion is wrong. PCL is not a party to the LC. The only parties to the LC are SBI-NY and LBG. Further, the LC does not give PCL any legal right to enforce, or to enjoin enforcement, of the LC. PCL attempts to get around the fact that it is neither a party to the LC nor an intended third party beneficiary of the LC by arguing that it will be indirectly affected by

payment of the LC – *i.e.*, PCL argues that it is incidental third party beneficiary of the LC. As a matter of well-settled law, an incidental third party beneficiary of a contract has no standing to enforce, or to enjoin enforcement of, the contract. This is particularly true where, as here, the affected party has an alternate forum for relief: the New Jersey construction contract arbitration brought by PCL. In that proceeding, PCL can arbitrate whether it is entitled to damages for the encashment of the LC together with its claims that LBG improperly terminated PCL's contract. The LC itself, however, is irrelevant to PCL's claim under the construction contract.

Although PCL has an alternate forum for relief in the New Jersey arbitration, it is improper to tie payment of the LC to any claim that PCL might later assert in the New Jersey arbitration. The independence principle applicable to LCs stands for the proposition that the LC is entirely independent of the construction contract for which it provides security. Under the independence principle, the LC should be paid and PCL should later seek its purported damages for the parties' construction contract in the New Jersey arbitration.

It is well-settled law that a court will not re-write a contract to give one party better or different terms than that which was negotiated between the parties. Here, PCL is effectively asking this Court to re-write the parties' agreement so that instead of providing an LC, a cash equivalent, PCL seeks to convert it into a surety bond for a future judgment. An LC and a surety bond are two entirely different instruments. An LC requires immediate payment upon a declaration of default by the beneficiary of the LC. A surety bond requires a finding of fault and of damages before payment will be made to the beneficiary. LBG did not bargain for or receive a surety bond: LBG bargained for and received an LC. To the extent that PCL seeks to intervene so that it may re-write the agreement to transform the contractually mandated LC into a surety bond, the motion to intervene must be denied.

PCL asserts a vague allegation of fraud in a weak attempt to thwart payment of the LC. The Rule governing motions to intervene requires that a movant to attach a proposed pleading setting forth the party's proposed claims and/or defenses. The Rule governing claims of fraud requires that such claims be plead with specificity. Here, PCL failed to attach a proposed pleading and its motions should therefore be denied on procedural grounds.

PCL's vague claim of fraud also fails on substantive grounds. Under well-settled law, if LBG had a colorable claim to declare PCL in breach of the construction contract, then LBG is entitled to encash the LC regardless of any claim of fraud asserted by PCL. Here, the express, unambiguous terms of the construction contract required PCL to complete mobilization by July 30, 2009. PCL failed to meet that deadline. Indeed, when LBG expelled PCL from the project in November 2009, PCL had not yet completed mobilization or begun any meaningful work. PCL does not dispute that it had not completed mobilization. Rather, PCL claims that its delay should be excused. Given the undisputed facts, LBG had a colorable claim to expel PCL from the project. Further, under New York law, a claim for fraud cannot be premised upon the performance of a pre-existing contractual duty. Here, if the Court accepts as true PCL's allegation that it was made to provide an LC when LBG had already determined to expel PCL from the project, that claim fails to state a cause of action for fraud because it alleges that PCL was made to perform a pre-existing contractual duty. The motion to intervene should be denied because PCL failed to annex the required proposed pleading, because LBG had a colorable claim to expel PCL from the project and because the performance of a pre-existing contractual duty cannot be fraud.

After LBG declared PCL in default of the underlying construction contract for which the LC provides security, PCL embarked upon a pattern of bad faith litigation meant only to delay

payment of the LC. Despite the fact that the LC was issued in New York, made payable in New York and subject to New York law, PCL attempted to gain a "hometown advantage" by running to an Indian court where PCL obtained an *ex parte* preliminary injunction enjoining SBI-NY from paying the LC. The Indian injunction has recently been dismissed on the merits after the Indian trial court ruled that India had no jurisdiction over the matter, that PCL's claim of fraud was wholly inadequate, and that delaying payment of the LC until after the construction contract arbitration was improper. Upon that dismissal, PCL then ran to an Indian appellate court and was issued another preliminary, non-final injunction. After its Indian adventure, PCL then sought an injunction in aid of its New Jersey arbitration before this Court. This Court has previously denied PCL's application for a temporary restraining order and other injunctive relief.  Since then, PCL has amended its Arbitration Demand in the New Jersey arbitration such that it is now seeking an injunction there. Not getting the answers it wanted in India or New York, PCL has embarked on a forum shopping spree hoping that some court or arbitration panel somewhere will rule in its favor.

In its comments to the scheduling of this motion, this Court stated: "The Court considers any motion for summary judgment premature at this time. Upon consideration of any motion filed the Court could convert it to one for summary judgment is appropriate." Given that the facts plainly show that no discovery is necessary and that payment of the LC is required as a matter of law, LBG respectfully requests that the Court convert the motion into one for summary judgment and enter an Order requiring the immediate payment of the LC.

## PROCEDURAL HISTORY

In its procedural history, PCL asserts that the Indian trial court ruled "that disputes concerning the enforceability of the letters of credit are arbitrable". [PCL Memorandum of Law at Pg. 4] PCL's assertion is patently false. The Indian court neither ruled nor stated that the issue of whether the LC should be paid was "arbitrable". To the contrary, **the Indian court explicitly stated that it was improper to make payment of the LC subject to the arbitration**.

The relevant portion of the Indian court's written opinion provides:

7)   Now the points that arise for determination are:

    1)   Whether the City Civil Courts, Hyderabad has no territorial jurisdiction to entertain the petition in view of the agreement between the parties to hold the arbitration proceedings in Morristown, New Jersey, United States of America?

    2)   Whether the petitioner [PCL] is entitled for injunction restraining the first respondent [LBG] from invoking the performance guarantees?

21)   …As can be seen from the agreement, the parties have specifically decided to settle the disputes under the Rules of the American Arbitration Association and arbitration proceedings shall be in English and be held in Morris Town [sic], New Jersey, U.S.A. Therefore, the principal Civil Court at Hyderabad has no territorial jurisdiction to entertain an application [for an injunction in aid of arbitration] under Section 9 of the Arbitration and Conciliation Act. This point is accordingly answered in favour of the first respondent [LBG].

23)   The law relating to invocation of bank guarantees[1] is now well settled. **When in the course of commercial dealings an unconditional bank guarantee is given or accepted, the beneficiary is entitled to realize the bank guarantee in terms thereof irrespective of any pending disputes**.

26)   This bank guarantee [the LC] clearly shows that it is an unconditional bank guarantee, which was furnished in the course of commercial dealings. Therefore, **the bank giving such guarantee i.e., third respondent [SBI] is bound to honour it as per its terms irrespective of any dispute arising between the petitioner [PCL] and the first respondent [LBG]**.

33)   Whether all circumstances which lead to the delay in execution of the work is justified or not is not a matter of concern for this Court. However, the petitioner

---

[1] Outside of the United States, a "letter of credit" is typically referred to as a "bank guarantee".

[PCL] ought to have foreseen certain contingencies that might occur during the execution of the work in view of the political uncertainties and other facts prevailing in that country. **There is no justification on the part of the petitioner in seeking extension of time for mobilization of men and machinery. Not accepting the explanation given by the petitioner for the delay in execution of the work does not *ipso facto* leads to an inference that the first respondent [LBG] was motivated with fraudulent intention to knock away the money of the petitioner by invoking the bank guarantee**. The first respondent has its own reason for not accepting the reasons of the petitioner for extension of time for completion of the project. **So not extending the time for completion of the project is no ground to draw an inference of fraudulent motive in invoking the bank guarantee by the first respondent**.

[Clark Dec. Ex. A – Indian Court Order (emphasis added)]

PCL raised the fraud argument to the Indian court. The Indian court rejected the argument stating that PCL was required to provide the LC within ninety days (*i.e.*, by July 30, 2009), had failed to do so and had also failed to mobilize personnel and equipment so that LBG was justified in expelling PCL from the project. [Clark Dec. Ex. A – Indian Court Order at ¶¶ 34-38] The Indian court also addressed PCL's claim of "irretrievable injury". The court stated PCL had failed to establish that LBG could not make PCL whole after the payment of the LC and the New Jersey arbitration. It therefore rejected the claim, stating: "I am of the view that the petitioner [PCL] failed to establish either the fraud played by the first respondent [LBG] or any irretrievable injury." [Clark Dec. Ex. A – Indian Court Order at ¶¶ 39-41]

PCL has embarked upon a pattern of bad faith litigation meant only to delay payment of the LC. Despite the fact that the LC was issued in New York, made payable in New York and subject to New York law, PCL attempted to gain a "hometown advantage" by running to an Indian court where PCL obtained an *ex parte* preliminary injunction enjoining SBI-NY paying the LC. The Indian injunction has been dismissed on the merits after the Indian trial court ruled that India had no jurisdiction over the matter, that PCL's claim of fraud was wholly inadequate, and that delaying payment of the LC until after the construction contract arbitration was

improper. Upon that dismissal, PCL then ran to an Indian appellate court and was issued another preliminary, non-final injunction. As a matter of well-settled law, this second, non-final Indian court order enjoining payment of an LC issued in New York, made payable in New York and subject to New York law is not entitled to comity.

After its Indian adventure, PCL then sought an injunction in aid of its New Jersey arbitration before this Court. This Court has previously denied PCL's application for a temporary restraining order. Not getting the answers it wanted in India or New York, PCL has embarked on a forum shopping spree hoping that some court or arbitration panel somewhere will rule in its favor. PCL is also seeking intervention in the Northern District of Illinois to prevent payment of another LC issued by JPMorgan Chase in Chicago and which was made payable in Chicago. That second action is still pending.

**LEGAL ARGUMENT**

I.  **PCL MAY NOT INTERVENE PURSUANT TO EITHER F.R.C.P. 24(A) OR 24(B).**

   A.  **PCL'S MOTION TO INTERVENE IS PROCEDURALLY DEFICIENT.**

   PCL's motion to intervene should be denied because it is procedurally deficient. PCL failed to annex a proposed pleading as required by *F.R.C.P.* 24(c) ("The motion must … be accompanied by a pleading that sets out the claim or defense for which intervention is sought."). *Abramson v. Pennwood Inv. Corp.*, 392 *F*.2d 759, 761 (2nd Cir. 1987) (Upholding denial of motion to intervene where no proposed pleading was annexed); *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 782*, F.Supp.* 870, 875 (S.D.N.Y. 1991) ("A motion to intervene must be accompanied by a pleading which sets forth the claim or defense for which intervention is sought."). PCL's utter disregard for the rule requiring that a proposed pleading be annexed to a motion to intervene is doubly problematic in light of its vague, vaporous allegation that LBG fraudulently induced PCL to obtain the letter of credit. *F.R.C.P.* 9(b) requires that a claim for fraud be plead with specificity. Here, not only does PCL fail to plead fraud with specificity, it fails to plead *anything whatsoever*, relying, instead, on the barest incantation of fraud. Annexing a proposed pleading and pleading fraud with specificity are threshold requirements that PCL has failed to address. PCL's motion to intervene should therefore be denied.

   B.  **PCL CANNOT ESTABLISH THAT IT HAS AN INTEREST IN THE LC THAT WILL BE IMPAIRED IF INTERVENTION IS DENIED.**

   PCL argues that is has a right to intervene pursuant to *F.R.C.P.* 24(a)(2). That rule provides:

   **Intervention as of Right**. On timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the

action, and is so situated that disposing of the action may as a practical matter impair or impeded the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Rule for intervention as of right establishes a four prong test requiring PCL to establish: (1) it is timely made; *and* (2) it has either an interest in the property or the transaction that is the subject matter of the suit; *and* (3) its interest in the property will be impaired or impeded if it is not permitted to intervene; *and* (4) that no party presently in the action adequately represents its interests. *See New York News, Inc. v. Kheel*, 972 *F.*2d 482, 485 (2ⁿᵈ Cir. 1992) ("Intervention of right will not be allowed unless all requirements of the Rule are met") *quoting United States v. State of New York*, 820 *F.*2d. 554, 556 (2ⁿᵈ Cir. 1987). LBG does not dispute that the motion is timely. However, LBG does dispute that PCL meets the remaining three prongs of *F.R.C.P.* 24(a).

As an initial matter, PCL has no interest in the LC. Every transaction involving an LC has three separate and distinct contracts. The only parties to the LC are SBI-NY and LBG. PCL is neither an "owner" of the LC nor is it a party to the LC. The mechanics of a standby letter of credit transaction has been explained:

> The basic letter-of-credit mechanism involves three or, as in this case, four parties: (1) the *customer* (or "account party"), who opens an account with (2) the *issuing bank,* which authorizes (3) the *confirming bank* to make payment to (4) the *beneficiary,* upon the beneficiary's presentation of certain documents specified in the letter of credit. *See* UCP art. 2 (1983); *Alaska Textile, 982 F.2d* at 815. ....
>
> Employed frequently in international transactions, the letter of credit is a device whereby the customer and the beneficiary -- who are parties to an underlying contract (generally buyer and seller respectively) but face each other over a distance -- substitute the credit of the intermediate banks, one in the country of each party, for the buyer's credit. The device gives the seller (the beneficiary) immediate payment from a local bank upon shipment of the goods; merely by presenting to the confirming bank documents evidencing shipment of the ordered goods, the seller receives payment. *See Alaska Textile, 982 F.2d at 815*.
>
> The central principle of letter-of-credit transactions is the so-called "independence principle": letters of credit, "by their nature, are separate transactions from the sales or other contract(s) on which they may be based and banks are in no way concerned with or

bound by such contract(s)." UCP art. 3; *Alaska Textile,* 982 *F.*2d at 815-16; *Rockwell Int'l Systems, Inc. v. Citibank, N.A.,* 719 *F.*2d 583, 587 (2d Cir. 1983) (letters of credit "represent separate contractual undertakings that are, in legal contemplation, wholly distinct from whatever performance they ultimately secure"); *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.,* 707 *F.*2d 680, 682 (2d Cir. 1983) (bank's obligation to the beneficiary "is primary, direct and completely independent of any claims which may arise in the underlying sale of goods transaction").

As is commonly noted, the parties to a letter-of-credit transaction "deal in documents, and not in goods, services and/or other performances to which the documents may relate." UCP art. 4; *Alaska Textile, 982 F.2d at 815-16.* Thus, the issuing or confirming bank must honor a proper demand even though the beneficiary has breached the underlying contract, *Centrifugal Casting Machine Co. v. American Bank & Trust Co.,* 966 *F.*2d 1348, 1352 (10th Cir. 1992); even though the insolvency of the account party renders reimbursement impossible, *Wood v. R.R. Donnelley & Sons Co.,* 888 *F.*2d 313, 318 (3d Cir. 1989); and notwithstanding supervening illegality, impossibility, war or insurrection, *KMW,* 606 *F.*2d at 16. This independence principle is universally viewed as essential to the proper functioning of letters of credit and to their particular value. *Centrifugal, 966 F.2d at 1352.* The central purpose of the letter-of-credit mechanism would be defeated if courts felt free to examine the merits of underlying contract disputes in order to determine whether letters of credit should be paid. *Id.*

*Semetex Corp. v. UBAF Arab American Bank*, 853 *F.*Supp. 759, 769-770 (S.D.N.Y. 1994).

PCL should not be permitted to intervene because it has no legal interest in the LC. In *Meridian Homes Corp. v. Nicholas W. Prassas & Co.,* 683 *F.*2d 201 (7th Cir. 1982), two brothers were entitled to the profits of a partnership, but were not partners. They sought to intervene in an action regarding the partnership agreement itself. The court upheld the district court's denial of the brothers' petition to intervene, holding that while the brothers had a financial interest in the interpretation of the partnership agreement, they had no legal interest in the agreement itself. *Id.* at 204. Just as in *Meridian Homes*, the present case involves a party with a financial interest in the outcome of the matter but no legal interest in the LC. And, just as in *Meridian Homes*, this Honorable Court should rule that PCL may not intervene solely due to an economic interest. *See also Smoot v. Mobil Oil Corp.*, 722 *F.*Supp. 849, 859-860 (D.Mass. 1989) (intervention denied where another party represented proposed intervenor's interests, there was no legally protectable interest and intervention would complicate and delay the proceedings).

PCL is not an intended third party beneficiary of the LC. In New York, the courts have adopted the reasoning and terminology of the Restatement (Second) of Contracts with regard to whether a third party beneficiary has enforceable rights under a contract. An intended third party beneficiary may sue to upon a contract whereas an incidental third party beneficiary may not. *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 *N.Y.*2d 38, 44-45, 485 *N.E.*2d 208, 495 *N.Y.S.*2d 1 (1985). The one who asserts that he is an intended third party beneficiary has the burden to establish that the parties to the contract intended that he have the right to sue upon the contract. *Mendel v. Henry Phipps Plaza West, Inc.*, 6 *N.Y.*3d 783, 786, 844 *N.E.*2d 748, 811 *N.Y.S.*2d 294 (2006) *quoting Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 *N.Y.*2d 314, 336, 451 *N.E.*2d 459, 464 *N.Y.S.*2d 712 (1983). Intention is determine by looking at the contract itself. *Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 *F.*2d 675, 679 (2nd Cir. 1989). Here, the LC provides no evidence that LBG and SBI-NY intended to give PCL the right to sue on the LC. PCL is an incidental third party beneficiary with no right to sue upon the LC.

Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a fact-specific determination. *Mastercard Int'lm Inc. v. Visa Int'l Serv. Ass'n*, 471 *F.*3d 377, 389 (2nd Cir. 2006). In *Fox v. Glickman Corp.*, 355 *F.*2d 161, 163 (2nd Cir. 1965), the Second Circuit affirmed the denial of a motion for intervention finding that the impairment required by *F.R.C.P.* 24(a) requires a showing that a denial of intervention would foreclose the rights of the proposed intervenor in a subsequent proceeding. Here, denial of PCL's motion to intervene would have no impact upon PCL's ability to pursue its claims in the New Jersey arbitration. *Mennen v. v. J.P. Morgan & Co.*, 229 *A.D.*2d 237, 241 (4th Dep. 1997) *aff'd* 91 *N.Y.*2d 13 ("If the customer believes that the beneficiary of the letter of credit was not entitled to the funds it received, the customer may assert a claim against the beneficiary under its contract with the

beneficiary."); *See also* 7C Wright *et al., Federal Practice & Procedure* § 1913, at 385 (2d ed. 1986) (denial of intervention appropriate where "there is another adequate remedy available to [Applicant] to protect [its] rights"); *All Service Exportacao, Importacao Cercio, SA v. Banco Bamerinindus Do Brazil, SA*, 921 *F*.2d 32, 35-36 (2nd Cir. 1990) (preliminary injunction restraining payment of letter of credit improper and remedy is suit on underlying contract).

Tying an LC to an underlying contract dispute defeats the very purpose and utility of an LC. The "independence principle" stands for the proposition that an LC is independent from any underlying transaction. *See UCC § 5-103(d)* ("Rights and obligations of an issuer to a beneficiary … are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it…."); *UCP Article 3(a)* ("Credits, by their nature, are separate transactions from the sales or other contract(s) on which they may be based …."); *Venizelos, S.A. v. Chase Manhattan Bank,* 425 *F*.2d 461, 464-65 (2nd Cir. 1970) ("a letter of credit is independent of the contractual arrangement for which it is the mode of payment"). A beneficiary is entitled to the money due under an LC while a court or arbitral panel decides issues arising from the "underlying contract" so as not to deprive the beneficiary of the very benefit for which he bargained, namely that any such contract dispute will be "resolved while he is in possession of the money." *Ground Air Transfer, Inc. v. Westates Airlines, Inc*., 899 *F*.2d 1269, 1271-1272 (1st Cir. 1990) *cited by 3Com Corp. v. Banco de Brasil, S.A*., 171 *F*.3d 739 (2nd Cir. 1999).

PCL alleges that it should be permitted to intervene because its reimbursement agreement with the bank gives it an interest in the LC. That is simply not so. The LC is independent of PCL's obligation to reimburse the bank. *See N.Y.U.C.C.* § 5-103(d) (McKinney 2005) ("Rights and obligations of an issuer to a beneficiary … are independent of … contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary."). Thus, the

law clearly provides that the LC is independent of any reimbursement agreement that PCL might have with SBI-NY. The only parties to the LC are SBI-NY and LBG. Therefore, PCL has no legal interest in the LC and the mere fact that it has a financial interest is insufficient as a matter of law to permit intervention. *Meridian Homes Corp., supra.*

### C.  PCL CANNOT ESTABLISH THAT ITS INTERESTS ARE NOT ADEQUATELY REPRESENTED.

PCL bears the burden of proof to establish that no party to this action adequately represents its interests. *F.R.C.P.* 24(a). PCL has utterly failed to meet that burden. Both SBI-NY and PCL argue that the LC should not be encashed. Indeed, SBI-NY has previously joined with PCL in PCL's request to stay payment of the LC until after the New Jersey arbitration or resolution of the Indian court case. [See Docket Entry #9] *United States v. Hooker Chems. & Plastics Corp.*, 749 *F.*2d 968 (2nd Cir. 1984) (denying intervention where proposed intervenor's interests were adequately represented by a party to the action); *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 *F.*2d 201, 205 (7th Cir. 1982) ("[W]here it is established that the parties have the same ultimate objective in the underlying action, the interveners must demonstrate, at the very least, that some conflict exists."). PCL has failed to establish that its interests are not adequately represented in this litigation.

PCL argues that SBI-NY does not adequately represent PCL because PCL has a reimbursement agreement with SBI-NY. The insinuation is that since PCL has sufficient funds to reimburse SBI-NY once SBI-NY pays LBG, there is a conflict of interest between SBI-NY and PCL. PCL cites to no authority for the proposition that a reimbursement agreement represents a conflict of interest between the applicant and the issuing bank. PCL previously represented to both the Indian court and to the Southern District of New York that it may not have sufficient funds to reimburse SBI-NY. Thus, PCL has either misrepresented its financial position to this

- 13 -

Court to insinuate that SBI-NY will be made whole so that it may intervene or it has previously misrepresented its financial position to the courts in India and this Court to insinuate that a restraining order was necessary because PCL did not have sufficient funds to reimburse the bank so that payment of the LC should be stayed. Regardless of the misrepresentation, the fact that PCL has a reimbursement agreement with SBI-NY does not establish that SBI-NY does not adequately represent PCL's interest in preventing payment of the LC. Because both SBI-NY and PCL have articulated the same goal, there is a presumption that SBI-NY adequately represents PCL's interests. *Ionian Shipping Co. v. British Law Ins. Co.*, 426 *F.*2d 186, 190-191 (2nd Cir. 1970) (Affirming denial of intervention where there was no showing that proposed intervenor's interests were not adequately represented); *Shea v. Angulo*, 19 *F.*3d 343, 347 (7th Cir. 1994) ("Where a prospective intervenor has the same goal as the party to a suit, there is a presumption that the representation in the suit is adequate"). As a final matter, denial of the motion to intervene would not leave PCL without a remedy. PCL may pursue damages from LBG in the NJ arbitration, where LBG will likewise be seeking damages from PCL. *See* 7C Wright *et al., Federal Practice & Procedure* § 1913, at 385 (2nd ed. 1986) (denial of intervention appropriate where "there is another adequate remedy available to [Applicant] to protect [its] rights"); *Mennen v. v. J.P. Morgan & Co.*, *supra*.

### D. THE PERFORMANCE OF A PRE-EXISTING CONTRACTUAL DUTY CANNOT BE THE BASIS FOR A CLAIM OF FRAUD AND LBG HAD A COLORABLE CLAIM TO DECLARE PCL IN BREACH AND EXPEL IT FROM THE PROJECT.

PCL argues that it should be permitted to intervene simply because it plans to allege some unspecified "fraud". As previously noted, PCL has failed to attach a proposed pleading as required by *F.R.C.P.* 24(c), and PCL has utterly failed to plead fraud with specificity as required

by *F.R.C.P.* 9(b). Both the Indian court and the Southern District of New York have previously heard PCL's allegations of fraud and both courts have rejected them.

In India, PCL argued that it was fraud for LBG not to excuse PCL's breaches of the contract. The Indian court found this argument wholly lacking and rejected it out of hand finding that PCL's breach of contract gave LBG every right to declare PCL in breach and that it was improper for PCL to seek a delay in the payment of the LC pending the arbitration in New Jersey. [Clark Dec. Ex. A. – Indian Court Order]

PCL previously brought an Order to Show Cause in the Southern District of New York claiming fraud. There, PCL argued that it was fraud for LBG to insist that PCL meet its pre-existing contractual obligation to provide Performance Security. See *Cauble v. Mabon Nugent & Co.*, 594 *F.Supp.* 985, 993 (S.D.N.Y. 1984) (A fraud "action cannot be predicated solely upon promissory statements relating to future acts which constitute the contractual obligations themselves; the failure to perform such promises of future acts is actionable in a suit for breach of contract, not fraud."); *Art Capital Partners, Lp v Tyco Acquisition Corp. Xviii, 2010*, 71 *A.D.*3d 1404, 1406 (4th Dep. 2010). This Court denied PCL's application for a temporary restraining order and other injunctive relief.

If PCL seeks intervention to argue that it was fraud to have PCL do what PCL was already contractually obligated to do, then as a matter of law, the claim fails to establish a fraud and the motion to intervene should be denied. *Chelsey Originals, Inc. v. D&Art, Inc.*, 1992 U.S. Dist. LEXIS 10486 **11-13 (S.D.N.Y.) (When allegations do not constitute fraud but merely amount to a breach of contract, an LC must be paid and the procuring party may file a breach of contract action). In this circuit any attempt to convert a breach of contract claim into fraud claim is futile and should be denied. *Abramson v. Pennwood Inv. Corp.*, 392 *F.*2d 759, 762 (2nd Cir.

1968) (Affirming denial of motion to intervene where "intervention by the appellant would be futile".); *In re Lustron Corp*., 184 *F*.2d 798, 802 (7th Cir. 1950) *cert. den*. 340 *U.S.* 946 (upholding District Court's Order denying motion to intervene because it was futile); *See, e.g., Jones v. New York Div. of Military & Naval Affairs,* 166 *F*.3d 45, 50 (2nd Cir. 1998) (stating the rule that leave to amend a pleading will not be permitted if the amendment would be futile).

The law recognizes a narrow fraud exception to an issuing bank's obligation to pay an LC upon presentation of complying documents. The fraud can be either: (1) a forged or fraudulent document, or (2) a fraud in the inducement of the underlying contract that is so great that it should void the entire transaction. *Banque Worms v. Banque Commerciale Privee*, 679 *F.Supp*. 1173, 1182 (S.D.N.Y. 1988). Anything less will not prevent payment of an LC. Here, there is no allegation that LBG presented forged or fraudulent documents.

The second type of fraud claim is limited to situations in which the wrongdoing of the beneficiary has permeated the entire transaction. *Itek Corp. v. First National Bank of Boston*, 730 *F*.2d 19, 25 (1st Cir. 1984) (attempt to draw on standby when there was "no plausible or colorable basis under the contract" deemed fraudulent); *Ground Air Transfer, Inc. v. Westates Airlines, Inc.,* 899 *F*.2d 1269, 1272-73 (1st Cir. 1990) (draft not fraudulent because claim of default at least "colorable"). Thus, the question is: Did LBG have a plausible or colorable basis to claim that PCL breached the underlying construction contract? If the answer is yes, then no matter what fraud is alleged by PCL, the allegation is insufficient as a matter of law to overcome the requirement that the LC be paid to LBG.

In the matter *sub judice*, LBG expelled PCL from the project, when more than six months into an eighteen-month project, PCL had not mobilized its people and material on site (a task that by contract was to be completed within the first ninety days), had failed to provide virtually

- 16 -

every deliverable required under the contract and had not begun any work on the roadway. [See Bailey Dec. at ¶¶ 6-28] Given that PCL had failed to complete mobilization, LBG clearly had a "plausible or colorable basis under the contract" to expel PCL from the project. PCL's entire claim is that had it known it would be expelled, it would have further breached the contract by not providing the contractually mandated LC. The argument is ludicrous and it does not establish fraud.

### E.  PCL IS NOT ENTITLED TO PERMISSIVE INTERVENTION.

*F.R.C.P.* 24(b)(1)(B) provides the court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." According to the Rule, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *F.R.C.P.* 24(b)(3); *Mumford Cove Assoc. v. Town of Groton*, 786 *F.*2d 530, 535 (2nd Cir. 1986) (affirming denial of motion to intervene where it would cause delay or prejudice). The Second Circuit will reverse a denial of permissive intervention only if the district court abused its discretion. *Farmland Dairies v. Commissioner of New York State Dep't of Agriculture*, 847 *F.*2d 1038, 1044 (2nd Cir. 1988).

The question of fact presented in the instant action is whether LBG made a conforming presentation of documents to SBI-NY as required by the LC. PCL was not involved in the presentation for payment. This question must be answered in LBG's favor as SBI-NY made no objection to the documents presented by LBG. The question of law presented in the instant action is whether an Indian court's preliminary, non-final injunction should be afforded comity to restrain payment of an LC issued and made payable in New York and subject to New York law. That is a matter of law to be determined solely by the Court. *Banco Nacional de Mexico, SA*

*v. Grupo Financiero Banamex*, 34 *A.D.*3d 124, 130-131 (1st Dep. 2006). There is no discovery needed to make this ruling.

PCL may not intervene if doing so would unduly delay this action. Without doubt, permitting PCL to intervene so that it may argue positions that are contrary to well-settled law would unduly delay this action. The law is clear that the Indian court is not entitled to comity for an order restraining payment of an LC performed in New York and subject to New York law. There is no dispute that the LC was performed in New York and is expressly subject to New York law. Likewise, the law is clear that a claim for fraud cannot be premised on a pre-existing contractual duty. There is no dispute that PCL had a pre-existing contractual duty to provide the LC. No discovery is required on this issue. It is simply a matter for the Court to give effect to clear and unambiguous contract terms. Even if the Court accepts as true PCL's allegations that PCL was made to pay the LC by LBG, as a matter of law that allegation fails to establish fraud because it merely recites that PCL was made to perform a pre-existing contractual duty. Finally, PCL's rights will not be affected if intervention is denied because, pursuant to settled law, the proper venue for PCL's claim that LBG should not have received the proceeds of the LC is the New Jersey arbitration. *Mennen, supra*, 229 *A.D.*2d at. 241; 7C Wright *et al., Federal Practice & Procedure* § 1913, at 385 (2nd ed. 1986) (denial of intervention appropriate where "there is another adequate remedy available to [Applicant] to protect [its] rights").

### F. THE NON-FINAL INDIAN COURT INJUNCTION IS NOT ENTITLED TO COMITY.

In the matter of *3Com Corp. v. Banco do Brasil, S.A.*, 2 *F.Supp.*2d 452 (S.D.N.Y. 1998) *aff'd* 171 *F.*3d 739 (2nd Cir 1999), the S.D.N.Y. ruled that comity will not be extended to a foreign court injunction involving an LC issued in New York and subject to New York law. New York cases where banks were compelled to fulfill their obligations relating to an LC issued in

New York and subject to New York law contrary to a court or government decree in a foreign jurisdiction include *J. Zeevi & Sons, Ltd. v. Grindlays Bank Ltd.*, 37 *N.Y.*2d 220, 371 *N.Y.S.*2d 892 (1975), *cert. denied*, 423 *U.S.* 866 (1975) (Uganda), *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 *F.*2d 516 (2nd Cir. 1985), *cert. dis.*, 473 *U.S.* 934 (1985) (Costa Rica), *Cantrade Privatbank AG Zurich v. Bangkok Bank Public Co.*, 256 *A.D.*2d 11, 681 *N.Y.S.*2d 21 (1st Dep't 1998) (Thailand); *Canadian Imperial Bank of Commerce v. Pamukbank Tas*, 166 *Misc.2d* 647, 632 *N.Y.S.*2d 918 (Sup. Ct. N.Y. Co. 1994) (Turkey); *All Service Exportacao, Importacao Comercio, S.A. v. Banco Bamerindus do Brazil, S.A.*, 921 *F.*2d 32, 36 (2nd Cir. 1990) (Brazil).

In *Banco Nacional de Mexico, SA v. Grupo Financiero Banamex*, 34 *A.D.*3d 124 (1st Dep. 2006), the New York Appellate Division ruled that even if a foreign court had jurisdiction over an underlying contract, the foreign court would not have jurisdiction over an LC issued and made payable in New York. The New York Appellate Division therefore ruled that an injunction entered by a Mexican court relating to the LC would not be extended comity. *Id.* at 130-131. Here, the Chase LC was both issued and made payable in New York and is subject to New York law. An Indian court issued a non-final injunction restraining payment of the LC. The law is clear and well settled that the Indian court injunction is not entitled to comity.

### G. THIS ACTION CONCERNING THE PAYMENT OF AN LC SHOULD NOT BE STAYED PENDING ARBITRATION OF THE UNDERLYING CONSRUCTION CONTRACT FOR WHICH THE LC PROVIDES SECURITY.

PCL next argues that this case should be stayed pending the outcome of the arbitration in New Jersey. That request should be denied because: (1) the motion is made in the wrong jurisdiction, (2) payment of the LC is not dependent upon the outcome of the arbitration of the underlying contract for which the LC provides security, and (3) LBG has not consented to

arbitrate the issue of payment of the LC.  This is the wrong venue for a motion in aid of a New Jersey arbitration. *See QAI, Inc. v. Sprint Communs., Co.*, 120 *F.Supp*.2d 1218 (C.D. Cal. 2000) (pursuant to the Federal Arbitration Act, 9 *U.S.C.* § 4, ***the proper venue for bringing an action for an injunction pending arbitration was in the district were the arbitration proceedings were occurring***.); *Boa v. Gruntal & Co*., 942 *F.Supp*. 978, 983 (D.N.J. 1996) (Stating that where an arbitration is being conducted in New York "only a federal court sitting in New York may entertain [plaintiff's] application for injunctive relief."). Here, the arbitration is being conducted in New Jersey. Thus, the only appropriate venue for a motion seeking an injunction in aid of arbitration is in the courts in New Jersey. To the extent that PCL's motion seeks an injunction in aid of arbitration it must be denied.

PCL urges that this matter be stayed pending arbitration regardless of whether the issue of payment of the LC is arbitrable. PCL's rationale is that the arbitration will resolve disputes arising under the underlying construction contract, which resolution might be "inconsistent" with a decision made by this Court. Under New York law, and under the law of letters of credit, the issue of whether an LC should be paid is not subject to the decision of any arbitral panel. *Banco Nacional De Mexico, SA v. Societe Generale*, 34 *A.D.*3d 124, 129 (1st Dep. 2006) ("The court further properly found that payment on the Letter [of Credit] was not conditioned on any 'arbitral award'"); *All Service Exportacao, Importacao Cercio, SA v. Banco Bamerinindus Do Brazil, SA*, 921 *F.*2d 32, 35-36 (2nd Cir. 1990) (preliminary injunction restraining payment of letter of credit improper and remedy is suit on underlying contract); *Venizelos, S.A. v. Chase Manhattan Bank*, 425 *F.*2d 461, 464-65 (2nd Cir. 1970) ("a letter of credit is independent of the contractual arrangement for which it is the mode of payment"); *Mennen v. v. J.P. Morgan & Co*., 229 *A.D.*2d 237, 241 (4th Dep. 1997) *aff'd* 91 *N.Y.*2d 13 ("If the customer believes that the

beneficiary of the letter of credit was not entitled to the funds it received, the customer may assert a claim against the beneficiary under its contract with the beneficiary."); *Bank of China v. Chan*, 937 *F*.2d 780, 786 (2d Cir. 1991) ("A bank issuing a letter of credit has a direct and absolute obligation to pay upon presentation of conforming documentation, entirely independent of claims arising in the underlying … contract"); *N.Y.U.C.C.* § 5-103(d) (McKinney 2005) ("Rights and obligations of an issuer to a beneficiary … are independent of … contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary."); *UCP Article 3(a)* ("Credits, by their nature, are separate transactions from the sales or other contract(s) on which they may be based and banks are in no way concerned with or bound by such contract(s), even if any reference whatsoever to such contract(s) is included in the Credit."). Thus, it would be plain error to make payment of the LC in this matter subject to an arbitration of the underlying contract for which it provides security.

It is undisputed that the LC does not contain an arbitration clause and that LBG has not consented to arbitrate the issue of non-payment of the LC. *Haviland v. Goldman, Sachs & Co.*, 947 *F*.2d 601, 604 (2nd Cir. 1991), *cert. denied*, 112 *S.Ct.* 1995 (1992) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Dulien Steel Products, Inc. of Washington v. Bankers Trust Co*., 298 *F*.2d 836, 841 (2nd Cir. 1962) ("The rule in New York seems well established that a bank issuing or confirming a letter of credit is not concerned with the underlying contract between the buyer and seller in the absence of appropriate provisions in the letter of credit."). Further, SBI-NY is not a party to the New Jersey arbitration and is not subject to its jurisdiction. LBG cannot be forced to arbitrate an issue that it has not agreed to arbitrate.

PCL's claim is that this action, and hence payment of the LC, should be stayed until disputes arising from the underlying construction contract can be arbitrated in New Jersey. PCL's position makes irrevocable standby letters of credit a nullity and not only ignores all law regarding letters of credit but totally contradicts and abrogates those laws. *See UCC § 5-103(d)* ("Rights and obligations of an issuer to a beneficiary … are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it…."); *UCP Article 3(a)* ("Credits, by their nature, are separate transactions from the sales or other contract(s) on which they may be based …."); *Venizelos, S.A. v. Chase Manhattan Bank,* 425 *F.*2d 461, 464-65 (2nd Cir. 1970) ("a letter of credit is independent of the contractual arrangement for which it is the mode of payment"); *Bank of China v. Chan*, 937 *F.*2d 780, 786 (2nd Cir. 1991) ("A bank issuing a letter of credit has a direct and absolute obligation to pay upon presentation of conforming documentation, entirely independent of claims arising in the underlying … contract"); *First Commercial Bank v. Gotham Originals, Inc*., 64 *N.Y.*2d 287, 295 (1985) ("[T]he issuer's obligation to pay is fixed upon presentation of the drafts and the documents specified in the letter of credit. It is not required to resolve disputes or questions of fact concerning the underlying transaction."); *Banco Nacional de Mexico, SA v. Grupo Financiero Banamex*, 34 *A.D.*3d 124 (A.D. 1st Dep. 2006) ("In other words, the 'letter of credit' prong of any commercial transaction concerns the documents themselves and is not dependent on the resolution of disputes or questions of fact concerning the underlying transaction") *Ground Air Transfer, Inc. v. Westates Airlines, Inc*., 899 *F.*2d 1269, 1271-1272 (1st Cir. 1990) *cited by 3Com Corp. v. Banco de Brasil, S.A*., 171 *F.*3d 739 (2nd Cir. 1999) (Any dispute of an underlying contract for which an LC provides security should be resolved with the beneficiary in possession of the money). There is no law that supports the proposition that payment of an LC should be stayed pending resolution of an underlying contract dispute.

Not one of the cases relied upon by PCL states that a court should stay payment of an LC, or an action for the payment of an LC, pending the resolution of dispute involving the underlying contract for which the LC provides security. Indeed, not one case cited by PCL involved an LC. *See, e.g., Sierra Rutile Ltd. V. Katz*, 937 *F*.2d 743 (2nd Cir. 1991) (action involving an exclusive agency agreement); *Orange Chicken, LLC v. Nambe Mills, Inc.,* 2000 *U.S. Dist. LEXIS* 18214 (S.D.N.Y.) (action involving infringement of exclusive license to sell certain cookware designs); *Midland Walwyn Capital Inc. v. Spear, Leeds & Kellog*, 1992 U.S. Dist. LEXIS 14289 (action challenging membership in American Stock Exchange). PCL ignores clear and well-settled law applicable to LCs and instead points the Court to cases that clearly have no application in the context of an LC to avoid the inevitable conclusion – that the LC should be paid to LBG and the parties should then go to arbitration to resolve any disputes involving the underlying construction contract.

As previously discussed, PCL is attempting to re-write the contract to get better or different terms than that which the parties agreed upon. *Barleo Homes v. Tudomawr Corp*., 214 *A.D.*2d 694 (2nd Dep. 1995) ("A court may not rewrite into a contract conditions the parties did not insert, or under the guise of construction, add or excise terms") *quoting Marine Associates v. New Suffolk Dev. Corp.*, 125 *A.D.*2d 649, 652 (2nd Dep. 1986). The construction contract required PCL to provide an LC to LBG. The LC is a contract between LBG and SBI-NY and required only that LBG certify to SBI-NY that PCL was in default in order for LBG to receive payment of the LC from SBI-NY. LBG has certified to SBI-NY that PCL was in default. In a "normal" situation, LBG would be in possession of the funds and the parties would be preparing for the New Jersey arbitration. However, has engaged in an improper course of conduct meant to delay payment of the LC. First, PCL ran to a court in India to "home town" LBG by getting a

preliminary, ex-parte injunction to prevent payment of the LC when the LC was performed in New York and subject to New York law. PCL is now attempting to prevent payment of the LC be asking this court to re-write the parties' agreement so that the LC can be effectively changed from an LC payable upon demand to a surety bond for which there must first be a finding of liability and damages in the underlying construction contract before any payment is made. The clear and unambiguous terms of the contract required PCL to provide an LC. This Court should give the parties what the bargained for - nothing more and nothing less. The parties bargained for an LC payable upon demand and not a surety bond payable after a finding of liability and damages. Therefore, PCL's motion for a stay pending arbitration of the underlying construction contract should be denied.

## CONCLUSION

For the reasons stated above, PCL's motion to intervene and for a stay pending arbitration should be denied.

In its comments to the scheduling of this motion, this Court stated: "The Court considers any motion for summary judgment premature at this time. Upon consideration of any motion filed the Court could convert it to one for summary judgment is appropriate." Given that the facts plainly show that no discovery is necessary and that payment of the LC is required as a matter of law, LBG respectfully requests that the Court convert the motion into one for summary judgment and enter an Order requiring the immediate payment of the LC. *Brenntag Int't Chemicals, Inc. v Bank of India*, 70 *F.Supp*.2d 399, 405 (S.D.N.Y. 1999) ("Courts of this district have repeatedly held that 'actions concerning letters of credit are well suited to determination by motion for summary judgment because they normally present solely legal issues relating to an exchange of documents.'") *citing Cooperative Agricole Groupement De Producteurs Bovins De L'Ouest v.*

- 24 -

*Banesto Banking Corp., 1989 U.S. Dist. LEXIS 8368*, No. 86 Civ. 8921 (PKL), 1989 WL 82454, at *2 (S.D.N.Y. July 19, 1989), *aff'd*, 904 *F*.2d 35 (2d Cir. 1990) (*quoting Banque Worms v. Banque Commerciale Privee,* 679 *F.Supp.* 1173, 1178 (S.D.N.Y. 1988), *aff'd*, 849 *F*.2d 787 (2nd Cir. 1988); *Chelsey Originals, Inc. v. D & Art, Inc.,* 1992 *U.S. Dist. LEXIS* 10486, No. 91 Civ. 5394 (CSH), 1992 WL 176597, at *2 (S.D.N.Y. July 15, 1992) ("Letters of credit are appropriately resolved by summary judgment since the parties dispute the significance of events rather than issues of fact."); *Bank of Cochin Ltd. v. Manufacturers Hanover Trust Co.,* 612 *F.Supp.* 1533, 1537 (S.D.N.Y. 1985), *aff'd*, 808 *F*.2d 209 (2d Cir. 1986).

Attorneys for Plaintiffs, The Louis Berger Group, Inc.:

J CLARK & ASSOCIATES, LLC
20 Church Street, Suite 15
Montclair, N.J. 07042
(973)-707-5346
jclark@jclarkassociates.com


/s/ John E. Clark
_____
By: John E. Clark, Esq.

McCUSKER, ANSELMI, ROSEN &
CARVELLI, P.C.
210 Park Ave., Suite 301
Florham Park, N.J. 07932
(973) 635-6300
aanselmi@marc-law.com


/s/ Andrew E. Anselmi
_____
By: Andrew E. Anselmi, Esq.