**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**THE LOUIS BERGER GROUP, INC.,**

*Plaintiff,*

v.

**STATE BANK OF INDIA,**

*Defendant.*

Case No.: 1:11-CV-00410-VM

**DECLARATION OF JOHN E. CLARK**

I, **JOHN E. CLARK, ESQ.** declare under penalty of perjury that the following is true and correct:

1. I am outside counsel for The Louis Berger Group, Inc. ("LBG") in the above captioned matter. I make this declaration based on personal knowledge and submit it in opposition to the motion filed by Progressive Constructions Ltd. ("PCL") to intervene and for a stay in this matter.

2. Annexed as **Exhibit A** is a true and accurate copy of the Indian Court Order and Opinion dismissing PCL's claims and dissolving its *ex parte* preliminary restraining order.

Dated: April 1, 2011

by: ______________________
John E. Clark

# Exhibit A

IN THE COURT OF THE II ADDITIONAL CHIEF JUDGE
CITY CIVIL COURTS : HYDERABAD

*Monday*, the *14th* day of *FEBRUARY*, **2011**

Present: Sri **M.LAKSHMI NARAYANA**,B.A.,LL.M.,
**II ADDITIONAL CHIEF JUDGE**

O.P.No.2313 of 2009

Between:

Progressive Construction Limited
Raghava Rathna Towers, Chirag
Ali Lane, Hyderabad - 500 001.
Rep. by Chief Executive Officer
Shiladitya Das. ... Petitioner

**AND**

1. The Louis Berger Group Inc.
Banjara Hills, Hyderabad 500 0034.
Head Office Morris Town, New Jersy,
Rep. by Senior Vice President Mr. Andrew.

2. Dave Little, The Engineer,
The Louis Berger Group Inc.
Sudan Infrastructure Services
Project (SISP), Juba - Nimule
Road Project, Southern Sudan.

3. State Bank of India, Industrial
Finance Branch, Rajbhavan Raod,
Somajiguda, Hyderabad,
Rep. by Asst. Branch Manager.

4. State Bank of India,
New York, NY, Rep.
by Vice President (Trade). ... Respondents

This Petition coming on 28-01-2011 for final hearing and disposal before me in the presence of Sri ***G.Arun***, Advocate for the Petitioner, of Sri ***A.V.Sarma***, Advocate for Respondents 1 and 2, of Sri ***M.Narender Reddy***, Advocate for Respondents 3 and 4, and having stood over for consideration till this day, this Court delivered the following:-

CERTIFIED PHOTOCOPY

**ORDER**

1) This petition is filed under Section 9 of the Arbitration and Conciliation Act 1996 seeking (a) declaration that the action of the first respondent in issuing notice of expulsion dated 21-10-2009 to the petitioner as null and void, (b) for stay of notice of expulsion dated 21-10-2009, (c) for an injunction restraining the first respondent from issuing letter of demand to respondents 3 and 4 in order to invoke the performance bank guarantee, (d) for an injunction restraining the first respondent from demanding any amount pursuant to the invocation of performance bank guarantee, (e) for injunction restraining respondents 3 and 4 from making any payment pursuant to the invocation/ encashment of performance bank guarantee, and (f) for permanent injunction restraining respondent No.1 from changing the terms of contract dated 30-04-2009.

2) The brief facts of the petitioner's case are that the petitioner is a public limited company engaged in carrying out construction activities in India and around the world. The Government of Southern Sudan received assistance from United States Agency for International Development under the Sudan Infrastructure Services Project, which is being administered by the first respondent. For the said project, the

respondent No.1 applications for pre-qualification design/build construction of Juba to Nimule Road in Southern Sudan. Under the said notification, the respondent No.1 intended to prequalify interested civil contractors for the said project, which is approximately for laying 192 kms. of road over 200 new pipe culverts. The petitioner applied for said pre-qualification application, basing on which, the respondent No.1 on 18-10-2008, gave confirmation letter to bid for the construction of Numule to Juba Road in Southern Sudan. The respondent No.1 issued a letter dated 12-12-2008 inviting to bid on two packages for the subject project. The entire work was divided into three separate packages. On 26-1-2009, the petitioner submitted its bid to the first respondent and thereupon, on 16-04-2009, the first respondent issued a letter of acceptance of the bid of Section 1 of Juba to Nimule road on a bid price of 3,40,10,704.34 USD. Further, respondent No.1 directed to submit certain documents. Accordingly on 30-04-2009, the petitioner and respondent No.1 entered into a contract for road construction of Section I and it was stipulated, *inter alia*, that the work shall commence from 1-5-2009 and the date of completion of said work will be 30-10-2010 with various other conditions specified in the contract. The petitioner further submitted that immediately after signing the

contract, as per the agreement, the petitioner started mobilisation of men and machinery. But the petitioner encountered some unexpected problems with regard to mobilisation of men and machinery and submission of bank guarantee within stipulated time of 90 days. Finally, the petitioner submitted performance bank guarantee issued by the third respondent for the project. The petitioner informed first respondent about the reasons for delay, which is beyond his control. But the respondent No.1 consistently sending letters pointing out the delay in commencing the work of the project. Thus, respondent No.1 without giving ample time to the petitioner to prepare and submit a recovery plan to regain the lapse of time, addressed a notice of default dated 1-10-2009 to the petitioner mentioning the series of letters from respondent No.2. Further, in the said notice the respondent No.1 mentioned clause 63.1 of the FIDIC contract wherein it was stated that after 14 days from the issue of the said notice, the respondent No.1 can enter upon the site and expel the petitioner without thereby voiding the contract or releasing the petitioner from their obligation. The Managing Director of the petitioner company along with their Chief General Manager all the way visited the office of the first respondent in Washington D.C. and explained them the reasons for the delay and

assured them that they would complete the work within stipulated time. The respondents 1 and 2 did not see matters as the same way and choose to ignore all attempts at reconciliation and steps to withdrawal of expulsion notice. The petitioner further submitted that the respondent No.1 had taken steps to put an end to the contract only to avoid making any payment to the petitioner as the funds of the first respondent are lying in the account of Nile Commercial Bank were presently unavailable in view of the insolvency of the said Bank. The respondent No.1 needed time to pool up source funds. It is further case of the petitioner that respondent No.1 illegally and arbitrarily dispossessed the petitioner company from the project site by issuing withdrawal notice, which is arbitrary, illegal and void and also consequently trying to encash the bank guarantee given by the petitioner even without commencement of the work. Hence, the petitioner urged for declaration that the impugned notice of withdrawal dated 21-10-2009 is null, void and not binding on the petitioner and also for consequential injunction restraining the respondents 1 and 2 from encashing the bank guarantee furnished by the petitioner through its banker, who is the third respondent.

3)   The respondents 1 and 2 filed a common counter stating,

*inter alia*, that the pre-qualification design/build construction of Juba - Nimule Road in Southern Sudan, is a contract under Sudan Infra-structure Service Project. The United States Agency for International Development is the client LBG Inc. is the employer and the Progressive Construction Limited (i.e., petitioner) is the contractor. Clause 67 of the FIDIC contract clearly stipulates upon disputes of any kind arising between the employer and the client. For settlement of disputes under clause 67.3 shall be finally settled under the Rules of American Arbitration Association. It is further submitted that the arbitration proceedings shall be in English and be held in Morris Town, New Jersey, U.S.A. The respondents 1 and 2 further submitted that it is a settled case law that a party seeking injunction restraining other party from encashing the bank guarantee has to show *prima facie* case of fraud or irretrievable injury. The respondents further submitted that the letter of the first respondent dated 12-08-2009 clearly puts forth the apparent inability and unwillingness to meet deadlines. On 1-10-2009, the first respondent sent a letter to the petitioner explaining their failures and obligations and on 21-10-2009, lastly expulsion notice was issued to the petitioner. From 1-6-2009, the respondent No.1 issued number of notices to the petitioner but the petitioner did not choose to rectify



his lapses nor attempted to move the arbitration proceedings for solving the disputes. The petitioner also filed O.P. seeking interim injunction only to restrain respondents 3 and 4 banks from making payment pursuant to the invocation of the performance bank guarantee dated 19-09-2009 and the Court ordered *status quo* to be maintained by the respondents 3 and 4 till 20-11-2007 which was extended upto 27-11-2009. The Respondents 1 and 2 further submitted that this Court has no jurisdiction to entertain the petition. Hence, the Respondents 1 and 2 urged for the dismissal of the petition.

4)   The third respondent filed a counter stating that they have given performance guarantee to an extent of 35,73,975 USD at the request of the petitioner and respondent No.1 submitted written request dated 1-10-2009 to this respondent invoking the bank guarantee and subsequently withdrew the said demand through their letter dated 16-10-2009. Hence, the third respondent urged for the dismissal of the petition with costs.

5)   The case of the fourth respondent is that on 22-9-2009, the third respondent sent a SWIFT message to this respondent being a guarantee dated 23-9-2009 in favour of the first respondent. The third



respondent was issuing bank and the fourth respondent had no liability to make any payment to respondent No.1 thereunder. The reference number assigned by the fourth respondent for this guarantee was IUCX 752410 (original guarantee). The original guarantee appears to be the instrument referred to as the 'performance bank guarantee' by the petitioner in the petition. On 2-10-2009, the fourth respondent received another SWIFT message from respondent No.3 that appears to be an amendment to the original guarantee. On 5-10-2009, the fourth respondent received a SWIFT message from respondent No.3 which was a protective SBLC in favour of this respondent with a request to the fourth respondent to issue its own letter of credit in favour of respondent No.1. The fourth respondent issued its letter of credit bearing No. CTCS-765365 (JPM guarantee). The JPM guarantee does not find mentioned in the petition under reply. If the original guarantee was revoked by respondent No.3 such revocation was not advised through the fourth respondent. Thus, the fourth respondent advised the original guarantee and its amendment and issued the JPM guarantee but is no way concerned with nor party to the transaction between the petitioner and respondents 1 and 2, that is the subject matter of the petition under reply. The fourth respondent further submitted that he

CERTIFIED PHOTOCOPY

is not a party to the arbitration agreement and, therefore, there is no cause of action against the fourth respondent. Hence, the fourth respondent urged for the dismissal of the petition with exemplary costs.

6) The petitioner has marked Exs A-1 to A-31. On behalf of the respondents no documents are marked.

7) Now the points that arise for determination are,-

1) Whether the City Civil Courts, Hyderabad has no territorial jurisdiction to entertain the petition in view of the agreement between the parties to hold the arbitration proceedings in Morristown, New Jersey, United States of America?

2) Whether the petitioner is entitled for injunction restraining the first respondent from invoking the performance bank guarantees?

8) <u>**POINT No.1**</u>: The admitted facts in this case are: The petitioner is a public limited company engaged in construction activities in India and abroad. The Government of Southern Sudan received assistance from the United States Agency for International Development under the Sudan Infrastructure Services Project scheme which is administered by the first respondent. The first respondent invited tender for the construction of Nimule to Juba Road to a length of approximately 192 kms, which was divided into three sections. Section 1 is for 55 kms, Section 2 is for 55 km.



to 125 kms. and Section 3 from 125 kms. to 192 kms. The petitioner company entered into a contract with the first respondent for Section 1 of Juba to Nimule Road for Southern Sudan for a bid price of $.34,010,704.34 (USD) and a contract was entered into between the petitioner and the first respondent on 30-04-2009. As per the said contract, the work shall commence on 1-5-2009 and shall be completed by 30-10-2010. It is also an admitted fact that there was a delay on the part of the petitioner in mobilisation of man power and machinery and submission of performance bank guarantee as per the terms and conditions of the contract. It is also an admitted fact that the first respondent addressed number of letters requesting the petitioner to commence the work and complete the work in accordance with the schedule and as the petitioner could not mobilise the man and machinery within the stipulated time, the first respondent issued notice of expulsion dated 21-10-2009 and finally dispossessed the petitioner from the site and also attempting to invoke the bank guarantee furnished by the petitioner.

9) According to the petitioner, the delay in mobilisation of the men and machinery and furnishing performance bank guarantee is beyond his control and due to the circumstances prevailing in Sudan and the petitioner has brought to the notice of the first respondent

CERTIFIED PHOTOCOPY

about the reasons for the said delay and impressed upon it that they would complete the work within the schedule time and requested the first respondent not to terminate the contract. Having not satisfied with the performance of the petitioner, the first respondent decided to terminate the contract and consequently, addressed a letter to the Bank invoking the bank guarantee furnished by the petitioner.

10) The first respondent mainly resisted the claim of the petitioner on the ground that this Court has no jurisdiction to entertain the petition. It is further contended by respondents 1 and 2 that this Court cannot entertain an application under Section 9 of the Arbitration and Conciliation Act in view of the specific agreement between the parties to refer the dispute to arbitration to be held in Morris Town, New Jersey in United States of America.

11) The learned counsel for the petitioner submitted that the petitioners have their Office at Hyderabad, the bank guarantee was furnished by the petitioner at Hyderabad as well as the notice of expulsion was received by the petitioner at Hyderabad. Moreover, the first respondent has got a Branch Office at Hyderabad. Therefore, the City Civil Courts at Hyderabad has got jurisdiction to pass interim



orders under Section 9 of the Act. He further submitted that the contention of the respondents is liable to be rejected in view of the principle laid down by the Hon'ble Supreme Court in ***Bhatia International*** vs. ***Bulk Trading S.A.*** **(2002) 4 SCC 105**, at page 119. He further submitted that as held by Their Lordships in the above referred case, ouster of jurisdiction must be express and it cannot be implied. The agreement between the parties does not show that there is ouster of jurisdiction of the Courts at Hyderabad. He further submitted that the jurisdiction of local national Courts where the contract has to be performed alone are having jurisdiction.

12) The learned first counsel for the respondents contended that as per Cl. 67.3 of Section IV of the agreement, any dispute arising under the contract shall be finally settled under the Rules of American Arbitration Association, that the arbitration proceedings shall be in English and be held in Morris Town, New Jersey, U.S.A. or such other place as is mutually acceptable to both parties. Thus, the New Jersey is designated by parties as place of arbitration. Hence, this Court has no jurisdiction to entertain the present petition. He further submitted that the project where the petitioner is expected to execute the work is situated in Southern Sudan, whereas the agreement was entered into

CERTIFIED PHOTOCOPY

between the parties in U.S.A. and the bank guarantee though issued by the third respondent, it was submitted to the first respondent at America. Thus, neither the impugned contract emerged between the parties at Hyderabad nor the place of work is situated at Hyderabad and therefore, the Court at Hyderabad has no territorial jurisdiction. He further submitted that the grievance of the petitioner has to be redressed only by way of arbitration to be held in Morristown, New Jersey, U.S.A. but it is not the intention of both parties to the agreement to confer jurisdiction on the Courts at City Civil Courts, Hyderabad. Hence, the learned counsel for the respondents urged that this Court has no jurisdiction to entertain the present petition.

13) Admittedly, the petitioner company is having its registered office at Hyderabad within the jurisdiction of this Court and the petitioner also furnished bank guarantee issued by the State Bank of India, Industrial Finance Branch i.e., the third respondent situated at Hyderabad. Whereas the registered head office of the first respondent is situated at Morristown, New Jersey, U.S.A. and the office of the second respondent is situated at Southern Sudan and the work has to be executed as per the contract at Southern Sudan. The expulsion of petitioner from the work site also occurred at Sudan and the attempt

CERTIFIED PHOTOCOPY

to encash bank guarantee also taken place at U.S.A.

14) Before dealing with the rival contentions of both parties, it is useful to refer to the relevant sub-clause dealing with arbitration in the agreement, which is as follows:

> "SUB-CLAUSE 67.3 - ARBITRATION:
>
> Delete the text of Sub-Clause 67.3 in its entirety and replace it with the following:
>
> "Any dispute in respect of which:
>
> (a) the decision, if any, of the Engineer has not become final and binding pursuant to Sub-Clause 67.1, and
>
> (b) amicable settlement has not been reached within the period in Sub-Clause 67.2,
>
> shall be finally settled under the rules of the American Arbitration Association. Arbitration proceedings shall be in English and be held in Morristown, New Jersey, U.S.A. or such other place as is mutually acceptable to both parties. The award of arbitration shall be final and binding upon the Parties for the dispute. The Parties to the dispute shall treat the enforcement of the arbitration award as an obligation under this Contract, and shall enforce such award without any delay. Each party shall bear equally the expenses of the arbitration, unless decided otherwise in the arbitration award. Arbitration may be commenced prior to or after completion of the Works, provided that the obligations of the Employer, the Engineer and the Contractor shall not be altered by reason of the arbitration being conducted during the progress of the Works.".

Thus, as can be seen from the above said term of the contract, the parties themselves have chosen Morristown, New Jersey, U.S.A. as situs for arbitration proceedings.



15) In ***Salarjung Museum, Hyderabad*** vs. ***Design Team Consultants Pvt. Ltd.*** **2010 (1) ALT 435 (DB).** While dealing with a dispute under Section 34 (1) of the Arbitration and Conciliation Act, Their Lordships have held that *if the place of arbitration is indicated in the agreement, the principle Civil Court situated at the agreed place of arbitration shall be the Court for the purpose of filing any application under Section 9 of the Act or application or petition under Section 34 of the Act.* Their Lordships have further held that *when the parties in exercise of their right under Section 20 of the Act, agree on a particular city as place of arbitration, it is a key to decide "the Court" for the purpose of Section 9 and Section 34 of the Act.*

16) In ***Paramita Constructions Pvt. Limited*** vs. ***UE Development India (P) Ltd.*** **2008 (3) ALT 440**, the parties agreed Bangalore as place of arbitration for referring the disputes between them to arbitrator. An application was filed before the Chief Justice of Andhra Pradesh High Court for appointment of arbitrator. Now the question came before the Hon'ble High Court with regard to the jurisdiction of Hon'ble Chief Justice of Andhra Pradesh High Court or the person designated to entertain application under Section 11 (6) of the Act. After elaborately discussing the relevant provisions of law, His Lord-



ship has held that as parties agreed Bangalore as place of arbitra--tion for referring disputes between them, the Principal Civil Court of Bangalore is, therefore, the Court for filing applications under Sections 9 and 34 read with Section 2 (e) of the Act and the Chief Justice of Andhra Pradesh High Court or the person designated by him is not having jurisdiction to entertain the application. For the same proposition, reliance can be placed on ***Globe Cogeneration Power Ltd.*** vs. ***Sri Hiranyakeshi Sahakari Sakkere Karkhane Niyamit*** **AIR 2005 Karnataka 94** and ***Kamal Pushp Enterprises*** vs. ***Chairman cum MD. Gas Authority of India Ltd.*** **31 DRJ 651 (Delhi)** wherein it was held that jurisdiction of the Court is not to be determined on the basis of residence of the respondent but only on the basis where the subject matter of the arbitration is situated.

17) The learned counsel mainly relied upon the decision of the Hon'ble Supreme Court in ***Bhatia International*** vs. ***Bulk Trading S.A.*** **(2002) 4 SCC 105.** The brief facts in this case are that the appellant entered into a contract with the first respondent on 9-5-1997, which contains an arbitration clause, which provides that the arbitration was to be as per the rules of the International Chamber of Commerce (ICC). On 23-10-1997, the first respondent filed a request for arbi-



tration with ICC and parties agreed that the arbitration be held in Paris, France. The first respondent filed an application under Section 9 of the Arbitration and Conciliation Act before the III Additional District Judge, Indore, M.P. against the appellant and the second respondent. One of the interim reliefs sought for was an order of injunction restraining these parties from alienating their properties. The appellant raised the plea of maintainability of such an application and contended that Part I of the said Act would not apply to arbitrations where the place of arbitration is not in India. But the trial Court has held that the Court at Indore has jurisdiction and the application was maintainable. On these facts, the Hon'ble Supreme Court held that the High Court rightly dismissed the application of the applicant and rightly confirmed the order of the trial Court holding that the application was maintainable. It was further held that for a Court which would otherwise have a jurisdiction in respect of the subject matter concerned, the ouster cannot he implied and ouster must be express. Their Lordships further held that general provisions applicable to all types of arbitration such as those contained in Sections 9 and 17 are, therefore, not repeated in every Chapter and Part of the Act. The relevant observations of the Hon'ble Supreme Court are hereunder:

CERTIFIED PHOTOCOPY

"A Court is one which would otherwise have jurisdiction in respect of the subject-matter. The definition does not provide that the Courts in India will not have jurisdiction if an international commercial arbitration takes place outside India. Courts in India would have jurisdiction even in respect of an international commercial arbitration. As stated above, an ouster of jurisdiction cannot be implied. An ouster of jurisdiction has to be express.".

18)   The facts in the above case are different from the facts in the present case.   In the instant case obviously, the Courts at Hyderabad lack inherent jurisdiction. Except the fact that the Office of the petitioner and the Office of the Bank which furnished the bank guarantee are at Hyderabad no other transaction has taken place at Hyderabad. The agreement was entered into between the parties at U.S.A. and the work that was assigned to the petitioner under the contract has to be executed at Sudan and the alleged breach of contract that gives rise to the present cause of action also occurred at Sudan.   The arbitration proceedings also commenced at U.S.A. in accordance with laws of U.S.A.

19)   To entertain a petition under Section 9 of the Act, the Court is one which would otherwise have jurisdiction in respect of the subject matter. As already adverted supra, the contract between the parties did not emerge within jurisdiction of this Court and the work assigned to the petitioner was at Sudan and breach of contract, if any,



has taken place at Sudan and nothing whatsoever was happened at Hyderabad. As can be seen from the petition, the registered office of the first respondent is situated at Morris Town, New Jersey.

20) In ***Bhatia International*** case **(2002) 4 SCC 105**, the Supreme Court has also observed that even in case of international commercial arbitration has taken place outside India, the Courts in India would have jurisdiction if such Court which would otherwise have jurisdiction in respect of subject matter. When the Court in India is inherently lacking jurisdiction, such jurisdiction cannot readily be invoked simply because the parties have entered into international commercial arbitration outside India.

21) In the ***Bhatia International*** case **(2002) 4 SCC 105**, a part of cause of action might have arisen in India and the Court at Indore is having inherent jurisdiction and the ouster of such inherent juris-diction cannot be readily be inferred unless there is a specific agree-ment to that effect. But in the instant case, as I have already stated supra, nothing whatsoever was happened in India either with regard to the formation of the agreement or breach of agreement which gives rise to arbitration proceedings. In ***Salarjung Museum, Hyderabad*** case **2010 (1) ALT 435 (DB)** and ***Paramita Construc-***

CERTIFIED PHOTOSTAT

*tions Pvt. Ltd.* case **2008 (3) ALT 440** as quoted above, it was held that when the parties in exercise of their right under Section 20 of the Act, agree on a particular city as place of arbitration, it is a key to decide "the Court" for the purpose of Section 9 and under Section 34 of the Act. As can be seen from the agreement, the parties have specifically decided to settle the disputes under the Rules of American Arbitration Association and arbitration proceedings shall be in English and be held in Morris Town, New Jersey, U.S.A. Therefore, the principal Civil Court at Hyderabad has no territorial jurisdiction to entertain an application under Section 9 of the Arbitration and Conciliation Act. This point is accordingly answered in favour of the first respondent.

22) **POINT No.2**: According to the petitioner, the action of the first respondent in issuing expulsion notice dated 21-10-2009 is illegal, arbitrary and void and consequently, the action of the first respondent in invoking the bank guarantee furnished by the petitioner is also illegal and tainted with fraud and that if the first respondent is allowed to invoke the performance bank guarantee furnished by the petitioner through the third respondent bank, the petitioner would suffer irretrievable injury. The petitioner not only sought for declaration that the notice of expulsion dated 21-10-2009 is null and void



but also sought for injunction restraining the first respondent from invoking the performance bank guarantee.

23) The law relating to invocation of bank guarantee is now well settled. When in the course of commercial dealings an unconditional bank guarantee is given or accepted, the beneficiary is entitled to realise the bank guarantee in terms thereof irrespective of any pending disputes.

24) In ***U.P. State Sugar Corporation*** vs. ***Sumac International Ltd.*** **(1997) 1 SCC 568**, it was held that *whenever bank guarantee is sought to be encashed by the beneficiary, the bank is bound to honour the guarantee irrespective of any dispute raised by the customer (at whose instance the guarantee was issued) against the beneficiary. This principle is subject to two exceptions viz., a fraud committed in the notice of the bank which would vitiate the very foundation of the guarantee or encashment of the bank guarantee would result in irretrievable harm or injustice of the kind which make it impossible for the guarantor to reimburse himself.* The Hon'ble Supreme Court also held that *except under these circumstances, the Court should not readily issue injunction to restrain realisation of the bank guarantee. Mere fact that the beneficiary had terminated the contract on ground that time was the essence*



*of the contract, which was disputed by the contractor (at whose instance the bank guarantee was issued), that would not amount to fraud.*

25) In ***Vinitec Electronics Private Ltd.*** vs. ***HCL Infosystems Ltd.*** **2007 AIR SCW 7015**, the Hon'ble Supreme Court reiterated the principle already laid in ***U.P. State Sugar Corporation*** vs. ***Sumac International Ltd.*** **(1997) 1 SCC 568** and held that *banker is bound to honour and pay the amounts at once upon receipt of written demand from the purchaser. And the only exception for granting an injunction from invoking the bank guarantee is when the bank contract is tainted with fraud of egregious nature or encashment of bank guarantee would cause any irretrievable injury or irretrievable injustice.*

26) Ex A-8 is the performance bank guarantee furnished by the petitioner to the first respondent as per the terms and conditions of the original contract, This bank guarantee clearly shows that it is an unconditional bank guarantee, which was furnished in the course of commercial dealings. Therefore, the bank giving such guarantee i.e., third respondent is bound to honour it as per its terms irrespective of any disputes arising between the petitioner and the first respondent. As held by Their Lordships in the above referred case, the Courts have carved out only two exceptions. A fraud in connection with such a



bank guarantee would vitiate the very foundation of such a bank guarantee. Hence, if there is such a fraud of which the beneficiary seeks to take advantage, he can be restrained from doing so. The second exception relates to cases where allowing the encashment of an unconditional bank guarantee would result in irretrievable harm or injustice to the petitioner. Therefore, now it has to be seen whether petitioner has placed sufficient evidence to draw an inference of fraud in connection with bank guarantee.

27) In ***Union of India*** vs. ***M/s Chaturbhai M.Patel & Co.*** **AIR 1976 SC 712**, it was held:-

> "It is well settled that fraud like any other charge of a criminal offence whether made in civil or criminal proceedings, must be established beyond reasonable doubt.".

28) In ***Bishnudeo Narain*** vs. ***Seogeni Rai*** **AIR (38) 1951 SC 280** (at page 283) it was observed by the Hon'ble Supreme Court that *in cases of fraud, the parties pleading it must set forth full particulars and the case can only be decided on the particulars as laid. There can be no departure from them in evidence. General allegations are insufficient even to amount to an averment of fraud of which any Court ought to take notice, however, strong the language in which they are couched may be.*

CERTIFIED PHOTOCOPY

29) Thus, as can be seen from the case law cited above, it is very clear that the petitioner, who laid the foundation for his case upon the fraud, cannot come to the Court on the general pleas and has to give specific circumstances *prima facie* showing that fraud was played or misrepresentation practised. The attending circumstances showing commission of fraud or the practising of undue influence have to be detailed to the satisfaction of the Court. General allegations are not the substitutes of the requisite pleading as required under Order 6 Rule 4 CPC. It is well established that in a proceeding filed on the basis of fraud, allegation of fraud must be clear, definite and specific. General allegations made, however, strong they are stated may be, if not accompanied by particulars are insufficient to amount to an averment of fraud on which the Court may take notice. The petitioner, who is seeking injunction restraining the first respondent from invoking the bank guarantee on the ground of fraud is under obligation to specifically state the particulars as to how the fraud was played and how he was induced to furnish bank guarantee by the first respondent.

30) The pleadings on behalf of the petitioner is silent with regard to fraud. Only in the reply filed by the petitioner to the counter filed by the respondents 1 and 2 at para 10, the petitioner pleaded that





the respondent No.1 had received 50 million USD from USAID and deposited the said amount in Nile Commercial Bank which has gone bust and to make up the resources the first respondent resorted to invoke bank guarantee.  Thus, according to petitioner, the respondent No.1 is playing fraud against the petitioner causing it irreparable loss and injury.  He further submitted that the petitioner has been expelled soon after furnishing of the bank guarantee and respondent No.1 now in-tending to invoke the bank guarantee whereby the petitioner will be put to irreparable loss resulting in irretrievable injustice which may not be compensated in terms of money.

31)   The petitioner has taken only a general pleading of fraud and has given a specific circumstance that 50 million USD was deposited by the first respondent in Nile Commercial Bank, which has gone into insolvency.  So to come out from financial imbroglio the first respondent is resorting to invoke bank guarantee.  The petitioner did not place any material to show that the first respondent received 50 million USD and they deposited the said amount in Nile Commercial Bank and that the said Nile Commercial Bank has gone into liquidation and the amount so deposited by the first respondent was locked up.  Except the self assertion made in the reply affidavit, there is no

CERTIFIED PHOTOCOPY

material whatsoever to substantiate the allegation made by the petitioner. Moreover, even assuming for arguments sake that what was stated by the petitioner is true with regard to the deposit of the amount by first respondent in Nile Commercial Bank and the insolvency of the said bank is true, that itself would not constitute a motive for the fraud on the part of the first respondent. The petitioner has to show that as on the date when the bank guarantee was furnished, the first respondent has got guilty mind to commit fraud on the petitioner and with that guilty mind the first respondent induced the petitioner to present a bank guarantee. After all the bank guarantee was furnished by the petitioner in pursuance of the terms and conditions of the original agreement. Thus, absolutely, there is neither pleading nor *prima facie* proof of fraud.

32) As can be seen from the petition, the petitioner himself admitted that immediately after signing the contract, as per the terms of the contract, the petitioner started mobilisation of men and machinery to the work place, but the petitioner encountered unexpected hurdles with regard to the mobilisation men and machinery. The petitioner further submitted that there was abnormal delay in getting visas to the man power. The machinery of the petitioner required for laying

CERTIFIED PHOTOCOPY



road were in Northern Sudan as the petitioner completed the project successfully there, which was earmarked to be shifted to the subject project.  The said delay was due to different departments of Government of Southern Sudan due to changing of policies between Federal Sudan and GOSS.  With regard to the delay in furnishing the bank guarantee, the petitioner submitted that when the petitioner approached the bankers for performance bank guarantee for $.3,40,10,704.34 USD, the bankers expressed several concerns/apprehensions and the said fact had been explained to respondent No.1 through mails and also during the meetings and finally, the petitioner could get the performance bank guarantee only by the end of September, 2009.

33)   Whether all circumstances which lead to the delay in execution of the work is justified or not is not a matter of concern for this Court.  However, the petitioner ought to have foreseen certain contingencies that might occur during the execution of the work in view of the political uncertainties and other facts prevailing in that country.  There is no justification on the part of the petitioner in seeking extension of time for mobilisation of men and machinery.  Not accepting the explanation given by the petitioner for the delay in execution of the work does not *ipso facto* leads to an inference that the first res-


CERTIFIED PHOTOCOPY

pondent was motivated with fraudulent intention to knock away the money of the petitioner by invoking the bank guarantee. The first respondent has its own reason for not accepting the reasons of the petitioner for extension of time for completion of the project. So not extending the time for completion of the project is no ground to draw an inference of fraudulent motive in invoking the bank guarantee by the first respondent.

34) Admittedly, the petitioner and the first respondent entered into contract for road construction of Section I of Juba to Nimule Road in Southern Sudan on 30-04-2009. It was stipulated, *inter alia*, that the work shall commence on 1-5-2009 and the petitioner shall complete the project by 30-10-2010 and there is also a stipulation in the contract that performance bank guarantee was to be submitted by the petitioner within 90 days from the date of commencement of the project. At the initial stage itself there was some difficulty on the part of the petitioner to comply with the terms and conditions of the agreement. In para 8 of the petition, the petitioner submitted that there was a delay in mobilisation of man power and the delay was attributable to delay in obtaining visas to the man power. Though getting visa of the Sudan Government is not within the hands of petitioner, he would



have foreseen this contingency even at the time when he entered into agreement. Obviously, any act of the first respondent did not cause the said delay.

35) There was also some delay in mobilisation of the machinery because the machineries were in Northern Sudan where the petitioner has successfully completed the project and they have to be shifted to Southern Sudan. The delay was an inordinate delay in different departments of Government of Southern Sudan. Once again this circumstance would have been foreseen by the petitioner at the time of settling terms and conditions for the contract. As per the terms and conditions of the agreement, the performance bank guarantee has to be submitted by the petitioner within 90 days from the date of commencement of the project. But there was a delay of about two months and the delay is because when the petitioner approached the bankers, the bankers created several problems. The problems created by the bankers to the petitioner is no ground to justify the delay. It is for the petitioner to take steps to furnish bank guarantee without any delay. Thus, at the very outset of the contract, there was some delay on the part of the petitioner in execution of work as admitted by him in the petition.

CERTIFIED PHOTOCOPY

36) It is submitted by the petitioner that respondent No.1 even though after thorough and proper information of the delay, issued a letter dated 1-6-2009 to the petitioner requesting it to comply the conditions of the contract. The respondent No.1 further issued letters to the petitioner reiterating the same. Ex A-9 is the letter dated 1-6-2009. On 12-8-2009, the first respondent again issued another letter specifying number of delays occurred in the contract period with regard to various contractual obligations. Later-on, on 17-8-2009, the first respondent again issued a letter (Ex A-10), pointing out the petitioner's lack of performance which can be a precursor to terminate the contract under Clause 63.1 of the Federation Internationale Des Ingenieurs Conseils (FIDIC) and asked the petitioner to reply to the said letter as to why the first respondent should not recommend to USAID that the contracts be terminated. The petitioner on 19-08-2009 has given a reply to the first respondent stating various reasons for the delay in commencing the project, but the first respondent without considering the genuine reasons given by the petitioner, issued a letter dated 22-8-2009 reiterating the same issue and sought a detailed response from the petitioner with regard to the significant issues of (i) providing performance security, (ii) providing mobilisation security and (iii) plan



to recover the time lost due to late mobilisation. Ex A-13 is the letter dated 20-8-2009. On 10-9-2009 the respondent No.1 issued notice to the petitioner demanding the petitioner to submit performance security bond on or before 18-9-2009 and also stated that if the petitioner failed to submit the performance security bond, it will result in default of the contract. Ex A-14 is the said letter dated 10-9-2009.

37) On 16-9-2009, the petitioner addressed a letter in reply to Ex A-14 elaborately giving reasons for the delay which are beyond the control of the petitioner and further assured that the work will be completed within the stipulated period as per the contract. Ex A-15 is the letter dated 16-09-2009. On 22-9-2009 the respondent No.1 addressed another letter to the petitioner raising concern for the delay in the project and asked the petitioner to file a recovery plan with appropriate actions demonstrating serious commitment to the project. The letter dated 22-09-2009 is marked as Ex A-16. Finally, the first respondent addressed a notice of default dated 1-10-2009 to the petitioner mentioning series of letters addressed by them pointing out where the petitioner failed to meet the contractual requirement and further mentioned that 14 days after the issue of notice the respondent No.1 can enter upon the site and expel the petitioner without thereby

voiding the contract or releasing the petitioner from the obligations of the contract. Ex A-17 is the said letter dated 1-10-2009. Thus, as seen from series of correspondence between the petitioner and the first respondent, it appears that always the petitioner tried to convince the first respondent that the delay is beyond his control and tried to assure the first respondent that they would complete the work within the stipulated time. But the first respondent without accepting the delay, has been insisting for due performance of the contract as per the schedule. Admittedly, the petitioner did not raise to the occasion and take up the work of the project within the time schedule, the first respondent finally taken a decision to serve expulsion notice and consequently, trying to invoke the bank guarantee. As I have already adverted supra, mere not accepting the reasons given by the petitioner for the delay and invoking the bank guarantee *ipso facto* does not lead to an inference that the first respondent is motivated with malice and fraudulent intention to encash the bank guarantee. But at no point of time, in the explanation letters written by the petitioner to the first respondent, the petitioner complained that any fraud was played on it. It did not send any notice to the second respondent complaining him that a fraud was played on the petitioner. For the first time, only after

filing of the counter by the respondents 1 and 2, the petitioner came with a reply pleading, in which they vaguely pleaded fraud and irretrievable injury.

38) As discussed above, in all the letters exchanged between the petitioner and the first respondent, the decision for terminating the contract and invocation of bank guarantee was taken because of the delay on the part of the petitioner in mobilisation of the men and machinery and furnishing of the bank guarantee and lack of seriousness in executing the work in accordance with the schedule agreed between the parties.

39) It is next contended by the learned counsel for the petitioner that the performance bank guarantee was given for a huge amount of 35,73,975 USD and if the first respondent is allowed to walk away with that amount, it would cause irretrievable injury to the petitioner.

40) On the question of irretrievable injury, which is the second exception to the rule against granting of injunction when unconditional bank guarantees are sought to be realised, the Supreme Court has stated in ***U.P. Co-op. Federation Ltd. v. Singh Consultants and***

*Engineers (P) Ltd.* **(1988) 1 SCC 174** that the irretrievable injury must be of the kind which was the subject matter of the decision in the *Itek Corpn.* case (**566 Fed Supp. 1210**). In that case an exporter in U.S.A. entered into an agreement with the Imperial Government of Iran and sought an order terminating its liability on stand by letters of credit issued by an American Bank in favour of an Iranian Bank as part of the contract. The relief was sought on account of the situation created after the Iranian revolution when the American Government cancelled the export licenses in relation to Iran and the Iranian Government had forcibly taken 52 American citizens as hostages. The US Government had blocked all Iranian assets under the jurisdiction of United States and had cancelled the export contract. The Court upheld the contention of the exporter that any claim for damages against the purchaser if decreed by the American Courts would not be executable in Iran under these circumstances and realisation of the bank guarantee/letters of credit would cause irreparable harm to the plaintiff. This contention was upheld. To avail this exception, therefore, exceptional circumstances which make it impossible for the guarantor to reimburse himself if he ultimately succeeds, will have to be decisively established. Clearly, a mere apprehension that the other party will not be able to

CERTIFIED PHOTOCOPY

pay, is not enough.

41) In the instant case also mere fact that the first respondent's Head Office is situated in U.S.A. itself is not a ground to draw an inference that the petitioner may not be in a position to recover the amount in case the arbitrator gives an award in his favour. Certainly, petitioner failed to show exceptional circumstance which makes it impossible for the petitioner to reimburse himself if he ultimately succeeds. Therefore, I am of the view that the petitioner failed to establish either the fraud played by the first respondent or any irretrievable injury.

42) The learned counsel for the petitioner further submitted that the arbitral proceedings is at an advance stage. The pleadings have already been completed. In response to the petitioner's claim, the first respondent has filed their answering statement and counter claim after repeatedly taking time. The petitioner has also filed their reply to the respondent No.1's counter claim. Once concluded, the award would finally and conclusively establish the parties' rights. Till such time, the interim measure granted by the Court should be continued. In support of his contention, he relied upon ***State of Haryana*** vs. ***Continental Construction Ltd.* (2002) 10 SCC 508** wherein the Court

has ordered continuance of interim order restraining encashment of bank guarantee and the order was made absolute till the arbitrator decides the dispute. The relevant observations of the Hon'ble Supreme Court are,-

> "Since the arbitration proceedings have since not been concluded and the order restraining encashment of bank guarantee has been in operation since 17-2-1998, it appears appropriate to us to make that order absolute till the matter is disposed of by the arbitrator.".

43)    When the petitioner filed this petition, my learned predecessor on 9-11-2009 passed *ex parte* interim order directing the parties to maintain *status quo* regarding the payment of amount pursuant to the invocation of performance bank guarantee dated 19-9-2009. Thereafter, the order has been extended from time to time. Now a situation has come before us that the arbitration proceedings were already commenced in USA and the parties have also filed their claim statement and answering statement and counter claims. Therefore, according to the petitioner, the *status quo* order has to be continued till the termination of the arbitration proceedings.

44)    The fourth respondent filed a memo stating, *inter alia*, that respondent No.1 addressed a letter dated 27-12-2010 to the fourth respondent demanding payment of full amount of the letter of credit,



CERTIFIED PHOTOCOPY

which was followed by another letter dated 29-12-2010 addressed to the fourth respondent by Attorney at Law of respondent No.1. The respondent No.4 issued a reply dated 4-1-2011 to the respondent No.1, *inter alia*, referring to *status quo* orders passed by the Hon'ble Court restraining respondent No.4 from making any payments under letter of credit. Nonetheless, the first respondent initiated legal action against respondent No.4 by filing complaint against respondent No.4 in the United States District Court for the Northern District of Illinois on 20-1-2011 for non-payment of amount under letter of credit. The learned counsel for respondents 3 and 4 submitted that the *status quo* order passed by this Court has been hanging on them. For honouring the *status quo* order and not allowing the first respondent to invoke the bank guarantee, the bank is facing risk of litigation initiated by the first respondent. Therefore, the counsel for third respondent urged that if the Court comes to the conclusion that the petitioner is not entitled for injunction, the *status quo* order to be vacated forthwith.

45) The facts and circumstances in ***State of Haryana***'s case **(2002) 10 SCC 508** are different from the facts in the present case. In the instant case, the *status quo* order was issued on 9-11-2009 whereas in the case cited above, the interim order has been pending for more than three years. Moreover, in the said case the arbitration proceed-

ings were completed. In the instant case, the arbitration proceedings are not yet completed. Only the claim statement and answer to the claim statement are filed. But main arbitration proceedings are still pending and it will take some more time to deliver the award. Moreover, taking into consideration the legal action initiated by the first respondent against the bankers for not honouring the contract/bank guarantee, I am of the view that this is not a fit case to extend the interim order till the conclusion of the arbitration proceedings.

46) In view of my discussion above, even assuming for arguments sake that this Court has got jurisdiction to entertain the petition, yet the petitioner is not entitled either for declaration that the impugned notice of expulsion dated 21-10-2009 as null and void or for an injunction restraining the first respondent from invoking the performance bank guarantee. This point is accordingly answered against the petitioner.

47) In the result, the petition is dismissed with costs. The interim status quo order granted on 9-11-2009 shall stand vacated.

Dictated to the Personal Assistant, transcribed and typed by him, corrected and pronounced by me in the Open Court, this the ***14th*** day of *February, 2011*.

II Additional Chief Judge
City Civil Court, Hyderabad





APPENDIX OF EVIDENCE

Witnesses Examined

For the Petitioner: - NIL -

For the Respondents: - NIL -

Documents Marked

For the Petitioner:

Ex A-1: Board Resolution dated 21-10-2008.
Ex A-2: Incorporation Certificate of petitioner company.
Ex A-3: P.Q.Notice issued by respondent No.1.
Ex A-4: Prequalification evaluation determination dt.18-10-2008.
Ex A-5: Letter of invitation to bid dt.12-12-2008.
Ex A-6: Letter of acceptance issued by resp. No.1 dt.16-04-2009.
Ex A-7: Contract agreement and MoU between R-1 and Petr.
Ex A-8: Performance bank guarantee issued from R-3 bank.
Ex A-9: Letter from R-1 to petitioner 1-6-2009.
Ex A-10: Letter by R-1 to petitioner dt.12-08-2009.
Ex A-11: Letter by R-1 to petitioner dt.17-08-2009.
Ex A-12: Rate of progress dt.22-08-2009.
Ex A-13: Notice to cure dated 10-09-2009.
Ex A-14: FIDIC.
Ex A-15: Letter by petr. to R-1, dt.16-09-2009, in reply to Ex A-13.
Ex A-16: Letter from R-1 to petr. dt.22-9-2009.
Ex A-17: Notice of default dt.1-10-2009.
Ex A-18: Letter by petr. to R-1 dt.12-10-2009.
Ex A-19: Reply by petr. to R-1 dt.14-10-2009.
Ex A-20: Letter by petr. to R-1 dt.14-10-2009.
Ex A-21: Letter by petr. to R-2 dt.19-10-2009.
Ex A-22: Letter by petr. to R-1 dt.20-10-2009.
Ex A-23: Letter by R-2 to petr. dt.21-10-2009.
Ex A-24: Letter by R-1 to petr. dt.21-10-2009.
Ex A-25: Reply letter by petr. to R-1 dt.29-10-2009.
Ex A-26: Reply letter by petr. to R-1 dt.30-10-2009.
Ex A-27: Reply letter by petr. to R-1 dt.30-10-2009.
Ex A-28: Letter by R-1 to R-2 dt.22-10-2009.
Ex A-29: Letter by R-1 to R-3 dt.16-10-2009.
Ex A-30: Letter of expulsion from site dt.02-11-2009.
Ex A-31: Letter of eviction from camp 2, dt.04-11-2009.

For the Respondents: - NIL -

II ACJ,CCC,Hyd.

CERTIFIED TO BE TRUE COPY

Copying Superintendent

COURT OF THE CHIEF JUDGE
CITY CIVIL COURT HYDERABAD
CENTRAL COPYIST ESTABLISHMENT
C.A. No. 4004/11
Application made on 17.2.11
Stamps Called on 26.2.11
Charges
Reported on 28.2.11
Charges a Sum of Rs. 82/-
Deposited U/R ... (1) U/R No. 4067
Copy Delivered on 3.3.2011
SUPERINTENDENT
Central Copyist Establishment
City Civil Court, Hyderabad

[illegible] COURT OF THE II ADDL. CHIEF JUDGE: CITY CIVIL COURT:HYDERABAD.

[illegible] this the 14th day of February 2011

[illegible] Sri M.Lakshminarayana,B.A.LL.M.

II Addl. Chief Judge,

**OP. 2313 OF 2009**

[illegible]

[illegible] C[illegible]struction Limited

A [illegible] incorporated under the [illegible] of the companies Act. 1956, having its registered office at 7th floor Raghava North Block, Raghava Rathna Towers [illegible] Lane, Hyderabad rep. by Chief Executive officer Shiladitya Das S/O [illegible] das aged 61 years R/O Banjara Hills [illegible]

AND Petitioner

1.The Louis Berger Group Inc. having its office at 114/A, M.L.A colony Road No.12, Banjara Hills. Hyderabad having its Head Office-412 [illegible] Kemble Ave. Morris Town New jersy rep. by Senior vice President Mr.Andrew Respondent No.1

2.Mr. Dave Little The Engineer, The Engineer, The Louis Berger Group Inc. Sudan Infrastructure services Project (SISP) JUBA Nimule Road Project [illegible] Cinema Juba, Southern Sudan Respondent No.2

3.State Bank of India Industrial Finance Branch [illegible] Road, somajiguda, Hyderabad rep. by its Asst. Branch Manager Respondent No.3

4.State Bank of India New York NY rep. by its Vice President (Trade) Respondent No.4

**Claim Petition filed U/Sec. 9 of the arbitration and Conciliation Act 1996 by the petitioner praying this court (a) declaring the action of the respondent No.1 in issuing notice of expulsion dated 21/10/2009 to the petitioner as null and void (b) to stay the notice of expulsion dated 21/10/2009 issued by the respondent No.1 to the petitioner and the consequences following therefrom © restraining respondent No.1 by order and injunction of this court from issuing the letter of demand to the respondent No.3 & 4 in order to invoke/encash the performance Bank guarantee date 29/09/2009 bearing reference No. 0207FLG0003/09 issued by respondent No.3 (d) restraining the respondent No.1 by order and injunction of this court from demanding any amount pursuant to the invocation of the performance bank guarantee dated 29/09/2009 bearing reference No. 0207FLG0003/09 issued by the respondent No.1 (e) restraining the respondent No.3 & 4 by order and injunction of this court from making any payment pursuant to the**



invocation/enchashment of the performance bank guarantee as issued by the respondent No.3 and counter guarantee by the respondent No.4 (f) permanent injunction restraining defendant No.1 and its agents servants employees representatives from changing the terms of the contract dated 30/04/2009 and also for costs of the petition.

A fixed court fee of Rs. 250/- is paid under Schedule-II Article-11 (m) of APCF and S.V.Act

This petition coming on this day before me for final disposal in the presence of Sri G.Arun Advocate for the petitioner and of Sri A.V.Sarma Advocate for respondents 1 and 2, and of Sri M.Narender Reddy Advocate for respondents NO.3 & 4 and this court doth order and decree as follows:

1. That the petition be and the same is hereby dismissed.
2. The interim Status quo order granted on 09/11/2009 shall stand vacated.
3. That the petitioner do pay a sum of Rs.5002/-to the respondents towards costs of this petition.

Given under my hand and seal of the court this the 14th day of February 2011.

II ADDITIONAL CHIEF JUDGE
CITY CIVIL COURT: HYDERABAD

MEMO OF COSTS

| | For Petitioner | For Respondents |
|---|---|---|
| 1.Stamps on petition | Rs: 1-00 | |
| 2.Stamps on vakalat | Rs. 2-00 | Rs. 2-00 |
| 3.Advocate's fee | | Rs. 5000-00 |
| 4.Process fee | Rs.150-00 | |
| Total Rs. | Rs.153-00 | Rs.5002-00 |

Sri. A. Madhava Rao (Adv)

II ADDITIONAL CHIEF JUDGE
CITY CIVIL COURT:HYDERABAD

COURT OF THE CHIEF JUDGE
CITY CIVIL COURT HYDERABAD
CENTRAL COPYIST ESTABLISHMENT
C.A. No. 4004 (1)
Application made on 17.2.11
Stamps Called on 26.2.11
Charges Deposited on 28.2.11
Charges in Sum of Rs. 82/-
Deposited U/R 207 (4) (1) U/r No. 4068
Addl. [illegible] 2
Addl. [illegible]
Copy [illegible] 3.3.11
Copy Delivered on 3.3.2011

SUPERINTENDENT
Central Copyist Establishment
City Civil Court, Hyderabad

CERTIFIED TO BE TRUE COPY
Copying Superintendent
Central Copying Estt
City Civil Court Hyderabad-A.P