Gregory A. Horowitz
Joel M. Taylor
Matthew C. Temkin
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
Email: ghorowitz@kramerlevin.com
Email: jtaylor@kramerlevin.com

*Attorneys for Proposed Intervenor*
*Progressive Constructions Limited*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
––––––––––––––––––––––––––––––––––––––––––––   x
THE LOUIS BERGER GROUP, INC.,               :     Civil Action No.: 1:11-CV-00410-VM
                                            :
                     Plaintiff,             :
                                            :
          v.                                :
                                            :
STATE BANK OF INDIA,                        :
                                            :
                     Defendant,             :
                                            :
PROGRESSIVE CONSTRUCTIONS LIMITED,          :
                                            :
                     Proposed Intervenor    :
                                            :
                                            :
––––––––––––––––––––––––––––––––––––––––––––   x
```

## REPLY MEMORANDUM OF LAW OF PROGRESSIVE CONSTRUCTIONS LIMITED IN FURTHER SUPPORT OF ITS MOTION TO INTERVENE AND FOR A STAY OF PROCEEDINGS IN THIS ACTION

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL HISTORY................................................................................................ 2

ARGUMENT....................................................................................................................... 3

Point I      PCL's Motion Satisfies Rule 24(c) .............................................................. 3

Point II     PCL May Intervene as a Matter of Right.................................................... 4

    A.      PCL Has a Legally Protectable Interest Relating to the Letter of Credit................ 4

        1.      PCL has more than a "betting interest" in this litigation. ........................... 4

        2.      PCL has stated a claim under § 5-109. ...................................................... 5

    B.      PCL's Interests Will Be Impaired if it is not Permitted to Intervene................... 13

    C.      SBI Does Not Adequately Represent PCL's Interests......................................... 13

Point III    The Court Should Permit PCL to  Intervene Pursuant to Fed.R.Civ.P. 24(b)(1)(B) .. 14

Point IV     Proceedings Should Be Stayed Pending Resolution of the Arbitration...................... 15

CONCLUSION................................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*All Service Exportacao, Importacao Comercio, S.A. v. Banco Bamerindus Do Brazil,*
    *S.A., New York Branch,*
      921 F.2d 32 (2d Cir. 1990) ......................................................................................13

*Banque Worms v. Banque Commerciale Privee,*
    679 F. Supp. 1173 (S.D.N.Y. 1988) .........................................................................6

*Brennan v. N.Y.C. Board of Education,*
    260 F.3d 123 (2d Cir. 2001) ....................................................................................4

*CBS Inc. v. Snyder,*
    136 F.R.D. 364 (S.D.N.Y. 1991).......................................................................13-14

*Cauble v. Mabon Nugent & Co.,*
    594 F. Supp. 985 (S.D.N.Y. 1984) .........................................................................12

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., (In re Merrill Lynch & Co.*
    *Research Reports Sec. Litig),*
    Nos. 02 MDL 1484(JFK), 02 Civ. 8472, 2008 WL 2594819 (S.D.N.Y. June 26,
    2009)........................................................................................................................5

*Don King Productions, Inc. v. Douglas,*
    742 F. Supp. 741 (S.D.N.Y. 1990) .........................................................................13

*Emery-Waterhouse Co. v. Rhode Island Hospital Trust Nat'l Bank,*
    757 F.2d 399 (1st Cir. 1985)............................................................................12 n.3

*Haviland v. Goldman, Sachs & Co.,*
    947 F.2d 601 (2d Cir. 1991) .........................................................................15 n.6

*Hilton v. Guyot,*
    159 U.S. 113 (1895)..............................................................................................12

*Hyosung America, Inc. v. Sumagh Textile Co.,*
    25 F. Supp. 2d 376 (S.D.N.Y. 1998), *aff'd,* 189 F.3d 461 (2d Cir. 1999) .................5

*Itek Corp. v. First Nat'l Bank of Boston,*
    730 F.2d 19 (1st Cir. 1984)......................................................................................6

KL3 2825744.1

*Kuriakose v. City of Mount Vernon,*
   41 F. Supp. 2d 460 (S.D.N.Y. 1999) .................................................................................... 12

*Lakeside at Pale Creek, LLC v. Takernash Meadows, LLC*
   *(In re Tabernash Meadows LLC),*
   2005 WL 375660 (Bankr. D. Colo. Feb. 15, 2005) ......................................................... 5-6, 7

*Mennen v. J.P. Morgan & Co.,*
   229 A.D.2d 237 (4th Dep't 1997), *aff'd*, 91 N.Y. 13 (1997) .................................................. 13

*Meridan Homes Corp v. Nicholas W. Prassas & Co.,*
   683 F.2d 201 (7th Cir. 1982) ................................................................................................. 4

*Mid-America Tire, Inc. v. PTZ Trading Ltd.,*
   95 Ohio St. 3d 367, 768 N.E.2d 619 (2002) ............................................................. 6, 9-10, 11

*Miller v. Silbermann,*
   832 F. Supp. 663 (S.D.N.Y. 1993) ....................................................................................... 14

*Nostrum Laboratories, Inc. v. Martec USA, LLC,*
   No. 600364/2009, 2009 WL 6318144 (N.Y. Sup. Ct. N.Y. Cnty Mar. 3, 2009) ..... 5, 6, 12 n.3

*Official Committee of Asbestos Claimants of G-I Holding v. Heyman,*
   No. 01 civ. 8539 RWS, 2003 WL 22790916 (S.D.N.Y. Nov. 25, 2003) ........................... 3 n.2

*Reich v. ABC/York-Estes Corp.,*
   64 F.3d 316 (7th Cir. 1995) ................................................................................................... 5

*Republic of Ecuador v. Chevron Corp.,*
   2011 WL 905118 (2d Cir. Mar. 17, 2011) ............................................................................ 15

*Rockwell Int'l Sys., Inc. v. Citibank, N.A.,*
   719 F.2d 583 (2d Cir. 1983) ......................................................................................... 12 n.3

*Sabolyk v. Morgan Guaranty Trust Co.,*
   No. 84 Civ. 3179 (MJL), 1984 WL 1275 (S.D.N.Y. Nov. 27, 1984) ............................... 13 n.5

*Smoot v. Mobil Oil Corp.,*
   722 F. Supp. 849 (D. Mass. 1989) ......................................................................................... 4

*Tachiona ex rel. Tachiona v. Mugabe,*
   186 F. Supp. 2d 383 (S.D.N.Y. 2002), *aff'd in part, rev'd on other*
   *grounds,* 386 F.3d 205 (2d Cir. 2004) ................................................................................... 3

*Werbungs UND Commerz Union Austalt v. Collector's Guild, Ltd.,*
   782 F. Supp. 870 (S.D.N.Y. 1991) ................................................................................... 3 n.2

KL3 2825744.1

## STATUTES & RULES

Fed. R. Civ. P. 9(b) ......................................................................................................................... 3

Fed. R. Civ. P. 24(b)(1)(B) ........................................................................................................... 14

UCC § 5-109   .................................................................................................................... *passim*

UCC § 5-109 official cmt. 1 ........................................................................................................... 5

## OTHER AUTHORITIES

Deferred Prosecution Agreement, available at ,
    http://www.dodig.mil/iginformation/IGInformationReleases/LBGSettlementPR.pdf ....... 2 n.1

KL3 2825744.1

## PRELIMINARY STATEMENT

PCL has an interest, protected under § 5-109 of the New York Uniform Commercial Code, to have its "material fraud" claim decided before any payment is made under the letter of credit. By advancing that claim PCL does not seek to re-write its agreement with The Louis Berger Group ("LBG"), to cast itself as a third-party beneficiary of the letter of credit, or to convert the letter of credit into a surety bond. It seeks to enforce a statutory right. A right that it will be precluded from asserting if intervention is denied and which State Bank of India ("SBI") has no intention or ability to assert on PCL's behalf. LBG induced PCL to provide it with the letter of credit through coercion and fraud. No matter how "colorable" LBG's basis for presenting the letter of credit may have been, it does not excuse the wrongful manner in which it obtained the credit. A contrary rule would reward fraud.

When PCL moved to intervene in this action the Hyderabad Court had repeatedly extended its injunction, over LBG's objections, for more than thirteen months. PCL did not come to this court shopping for a better result. It sought relief injunctive relief from this Court only after LBG contested the Hyderabad Court's jurisdiction to issue the injunction on the ground that the letter of credit dispute fell within the scope of the arbitration clause contained in the parties' construction contract. A position, on which LBG subsequently prevailed, that is squarely at odds with its contention in this action that the letter of credit is "independent" of the underlying contract. LBG cannot now deny the arbitrability of PCL's § 5-109 claim or feign any prejudice from a stay pending arbitration. LBG has no immediate need for the money that it is seeking, and its suggestion that adjudicating PCL's § 5-109 claim would undercut the integrity of in international development contracts rings hollow. In November 2010, LBG entered into a deferred prosecution agreement resolving charges that it criminally defrauded the United States

Agency of International Development out tens of millions of dollars.[1] If anything, one would think that the government would welcome careful scrutiny of LBG's behavior. LBG is simply trying to exert pressure on PCL to compromise its meritorious arbitration claims. PCL respectfully submits that its rights should not be cut off before it is even permitted to take discovery.

## PROCEDURAL HISTORY

In its February 14, 2011 opinion and order, the Hyderabad Court accepted LBG's argument that it lacked jurisdiction to enjoin payment on the letter of credit because the parties' dispute concerning the enforceability of the letter of credit falls within the scope of the arbitration clause. The opinion states in relevant part:

> The learned first counsel for [LBG] contended that as per Cl. 67.3 of Section IV of the agreement, any dispute arising under the contract shall be finally settled under the Rules of American Arbitration Association, that the arbitration proceedings shall be in English and be held in Morris Town [sic], New Jersey, U.S.A. or such other place as mutually acceptable to both parties. Thus, the New Jersey is designated by parties as place of arbitration. Hence, this Court has no jurisdiction to entertain the present petition.
>
> \*    \*    \*    \*    \*
>
> As can be seen from the agreement, the parties have specifically decided to settle the disputes under the Rules of the American Arbitration Association and arbitration proceedings shall be in English and held in Morris Town [sic], New Jersey, U.S.A. Therefore, the principal Civil Court at Hyderabad had no territorial jurisdiction to entertain an application under Section 9 of the Arbitration and Conciliation Act. This point is accordingly answered in favor of the first respondent.

---

[1]   See, http://www.dodig.mil/iginformation/IGInformationReleases/LBGSettlementPR.pdf

(Taylor Decl Exh. B at 14 and 22). That the Court went on to address the merits of PCL's petition does not alter that determination. PCL's appeal from the February 14 order remains "part heard" before the High Court.

## ARGUMENT

### Point I
### PCL's Motion Satisfies Rule 24(c)

LBG argues (at 4-5) that PCL's motion is procedurally deficient because it does not attach a proposed pleading. But, as this Court and others in this district have recognized, where "the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements." *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002) (J. Marrero) (granting intervention where intervenor's position was set forth in "related briefs filed in conjunction with the motion."), *aff'd in part, rev'd on other grounds*, 386 F.3d 205 (2d Cir. 2004).[2] Here, in connection with its order to show cause, PCL filed detailed briefs and a sworn declaration stating, with sufficient particularity to satisfy Fed. R. Civ. P. 9(b), the factual basis for its § 5-109 claim. PCL summarized those allegations in its opening brief (at 5-7) in support of the present application. LBG does not claim any prejudice from the lack of a pleading. To cure any deficiency, PCL appends as Exhibit A to the Declaration of Joel M. Taylor a proposed Answer and Counterclaim. If the Court determines that its § 5-109 claim is arbitrable, PCL will voluntarily dismiss its Counterclaim.

---

[2]    See also, *Official Committee of Asbestos Claimants of G-I Holding v. Heyman*, No. 01 civ. 8539 RWS, 2003 WL 22790916, at * 4 (S.D.N.Y. Nov. 25, 2003) (Sweet, J.) (same, citing *Tachiona*; Rule 24(c) satisfied where parties were "sufficiently apprised of the grounds for the motion and an attachment of an identical copy of the complaint would serve no useful purpose."); *Werbungs UND Commerz Union Austalt v. Collector's Guild, Ltd.*, 782 F.Supp. 870, 874 (S.D.N.Y. 1991) (Tenney, J.) (affidavits and briefs set forth sufficient facts and allegations to give all parties notice of intervenor's claims and failure to file a pleading did not prejudice any party).

KL3 2825744.1

**Point II**
**PCL May Intervene as a Matter of Right**

A.   **PCL Has a Legally Protectable Interest Relating to the Letter of Credit.**

      LBG argues that PCL has a mere "betting interest" in the outcome of this litigation and that its motion is futile because it fails to allege facts sufficient to state a claim. Both contentions are wrong.

     1.   **PCL has more than a "betting interest" in this litigation.**

      LBG argues (at 9-13) that under the independence principle PCL lacks any "legal interest in the LC," and that a mere financial interest in the outcome of a litigation is not sufficient to warrant intervention as of right, citing as support for the later proposition *Meridan Homes Corp v. Nicholas W. Prassas & Co.*, 683 F.2d 201 (7th Cir. 1982) and *Smoot v. Mobil Oil Corp.*, 722 F. Supp. 849 (D. Mass. 1989). But, PCL need only claim an interest "relating to", not "in", the letter of credit, *Brennan v. N.Y.C. Board of Education*, 260 F.3d 123, 130 (2d Cir. 2001), and LBG does not respond to the cases cited in PCL's opening brief (at 8) demonstrating that it has such an interest because:  (a) encashment of the letter of credit will effect PCL's legal rights as the ultimate obligor under the letter of credit; and (b) an applicant's interest in having the validity of a letter of credit determined is sufficient to warrant intervention in an action seeking to enforce the credit.  LBG does not cite a single case in which an applicant has ever been denied the right to intervene in an action seeking to enforce a letter of credit.

      LBG's reliance on *Meridian* and *Smoot* is misplaced.  In those cases the proposed intervenors had a mere "betting interest" in the litigation in which they sought to intervene.  A situation that the Seventh Circuit described in a subsequent opinion limiting its holding in *Meridian* as one in which "a third party who has some outstanding monetary claim from one of the parties attempts to intervene to ensure that the outcome of the case preserves as much of its

-4-

claim as possible." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 322-23 (7th Cir. 1995). PCL does not claim a "betting" interest in this litigation. It claims an interest, protected by § 5-109, in having its "material fraud" claim decided before any payment is made on the letter of credit.

The independence principle is of no help to LBG. Section 5-109 codifies a well established common law exception to that doctrine's "pay first, sue later rule." *Hyosung America, Inc. v. Sumagh Textile Co.*, 25 F. Supp. 2d 376, 385 (S.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999). *See also, Nostrum Laboratories, Inc. v. Martec USA, LLC*, No. 600364/2009, 2009 WL 6318144 (N.Y. Sup. Ct. N.Y. Cnty Mar. 3, 2009) (discussing the recodification of the fraud exception in § 5-109).

### 2.   PCL has stated a claim under § 5-109.

In deciding whether a proposed intervention is "futile," the court "employs the same standards as it would apply in considering a motion to dismiss for failure to state a valid claim." *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, (*In re Merrill Lynch & Co. Research Reports Secs. Litig.*), Nos. 2 MDL 1484(JFK), 02 Civ. 8472(JFK), 2008 WL 2594819, at *5 (S.D.N.Y. June 26, 2008). Specifically, the court must accept all non-conclusory allegations in the motion as true and draw reasonable inferences in favor of the intervenor. *Id.* PCL's motion satisfies that standard.

For purposes of § 5-109, a "material fraud" occurs when a beneficiary's conduct has "'so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served.'" UCC § 5-109, Official Cmt. 1 (quoting and endorsing *Intraworld Indus. v. Girard Trust Bank*, 336 A.2d 316, 324-25 (Pa. 1975)). Such conduct occurs "where a party attempts to gain the benefit of a credit or a contract without discharging his own obligations in the transaction." *Lakeside at Pale Creek, LLC v. Takernash*

-5-

*Meadows, LLC* (*In re Tabernash Meadows, LLC*), Nos. 03-24392 SBB, 03-1899HRT, 2005 WL 375660, at \*7 (Bankr. D. Colo. Feb. 15, 2005) (collecting cases; noting that "the legislative history of section 5-114(2) indicates that 'fraud in the transaction' was meant to . . . provide for injunctive relief based solely on the beneficiary's misperformance of the underlying contract."). In evaluating whether such a fraud would occur a court's "focus should be on [the] parties' original allocation of risks and responsibilities." *Itek Corp. v. First Nat'l Bank of Boston*, 730 F.2d 19, 25 (1st Cir. 1984) (*citation omitted*). "By obtaining a letter of credit . . . the customer should not be required to assume the risk of making payment to a beneficiary who has engaged in fraudulent conduct in the underlying transaction." *Mid-America Tire, Inc. v. PTZ Trading Ltd.*, 95 Ohio St. 3d 367, 389, 768 N.E.2d 619, 639 (2002).

LBG's mischaracterizes (at 16) this Court's opinion in *Banque Worms v. Banque Commerciale Privee*, 679 F. Supp. 1173 (S.D.N.Y. 1988) as establishing two exclusive categories of conduct that constitute "material fraud." That reading is squarely at odds with the intent of the UCC's drafters, who "eschewed a dogmatic approach and adopted a flexible standard to be applied as the circumstances of a particular situation mandate." *Nostrum Labs.*, 2009 WL 6318144. *Banque Worms* does not even discuss the two supposed categories that LBG attempts to graft onto the opinion. LBG's description (at 16) of the "colorable basis" standard is similarly misleading. As discussed in *Nostrum Laboratories*, the Official Comments to the U.C.C. state: "Material fraud by the beneficiary occurs only when the beneficiary has no colorable right to expect honor and where there is no basis in fact to support such a right to honor." *Id.* Nothing in that standard compels the conclusion that LBG seeks to draw, that a beneficiary has a right to expect honor of a letter of credit that it procured through fraud simply because it has a "colorable basis" to claim that the applicant breached the underlying contract.

-6-

Such a rule would reward fraud. As discussed above, the test of "material fraud" is whether the beneficiary is attempting "to gain the benefit of a credit or a contract without discharging his own obligations in the transaction." *In re Tabernash Meadows, LLC*, 2005 WL 375660, at \*7.

Here, LBG improperly demanded that PCL deliver performance security, threatening to declare it in default of the underlying construction contract and to encash bid bonds previously posted by PCL, before PCL's obligation to provide that security had matured under the contract. That demand was predicated on a false certification provided by LBG's engineer, David Little, stating that PCL was in default of the contract due to its failure to provide LBG with performance security. LBG thereafter promised PCL that if it delivered the requested security it would fairly evaluate PCL's ongoing performance under a revised work program designed to complete the project in a timely manner. Relying on that promise, PCL delivered the letter of credit to LBG who immediately declared a default and expelled PCL from the project without fairly reviewing its performance under its revised work program.

Those allegations are sufficient to state a claim under § 5-109 for at least two independent reasons. *First*, LBG's threat to encash the bid bonds based on an improperly declared default standing alone constitutes equitable fraud. *In re Tabernash Meadows LLC*, 2005 WL 375660, at \*6 (quoting *Capital Gains*, 375 U.S. at 193-94, 84 S.Ct. at 284: "Fraud, indeed, in the sense of a court of equity properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.") (citation and internal quotation marks omitted). Engineer Little breached his duty to exercise his discretion "impartially within the terms of the Contract" when he falsely certified that PCL was in default of its obligation to provide LBG with performance security. (Taylor Decl. Exh. D at

-7-

PCL000111). Mr. Little's breach enabled LBG to take "undue and unconscientious advantage" of PCL by coercing it to deliver performance security before its obligation to do so had matured under the contract.

LBG asserts that PCL did have a contractual obligation to deliver performance security because under the construction contract PCL would have had the right to request a first interim progress payment, in the form of a mobilization payment, if it had completed its mobilization within ninety days, as supposedly required under the contract. In effect, LBG is trying to convert a right to obtain a mobilization payment into an obligation to do so. That position is inconsistent with the plain language of the contract, which does not specify a fixed date by which PCL was to provide performance security. Instead, the contract simply conditioned LBG's obligation to pay PCL an initial interim progress payment on PCL's delivery of performance security. The Contract states in relevant part: "The following documents and submissions are due on the noted days following the date of the Letter of Acceptance: A. Sub-Clause 10.1 – The Performance Security in the amount of ten percent (10%) of the contract amount. Prior to the submission of the initial interim Progress Payment." (Taylor Decl. Exh. C at PCL000184).

It is also evident from the structure of the contract that the parties did not intend to fix a date by which PCL was to submit performance security. For example, in the Acceptance Letter LBG specified a fixed number of days by which each contractual submission was due, with one exception: submission of performance and mobilization security. For delivery of the security instruments LBG specified that they were due "prior to the submission" of a request for the payment that they secured. (Id.). The parties' intent is also evident from the fact that LBG replaced Clause 10.1 of the General Conditions of Contract, which did specify a fixed number of

-8-

days by which performance security was to be provided ("within 28 days after the receipt of the Letter of Acceptance") with Sub-Clause 10.1 of the Conditions of Particular Application which does not ("Provision of the Performance Security is a condition precedent to the submission of the initial interim Progress Payment."). (Compare Taylor Decl. Exh. D at PCL000017 with Exh. C at PCL000212).

        If the parties had intended the ninety-day mobilization period to serve as a deadline for submission of performance security, they would have said so in the contract. LBG clearly knew how to specify a fixed submission deadline when that is what it intended. It did not do so for the provision of performance security. Instead, it removed the fixed deadline contained in the General Conditions and replaced it with a flexible deadline tied to the timing of a request for payment of an initial interim progress payment. Tying the deadline for delivery of performance security to the submission of an initial interim progress payment represents an allocation of risk designed to: (a) allow LBG to avoid making an initial progress payment until it received an acceptable security instrument; and (b) allow PCL to avoid the cost and risk associated with procuring performance security until it sought payment of an initial interim progress payment. The original, reciprocal allocation of risk, which was altered as a result of LBG's wrongful conduct, should be restored by enjoining LBG from demanding payment on the letter of credit.

        *Second*, LBG fraudulently induced PCL to deliver the letter of credit by falsely promising to fairly evaluate its performance under a revised work program. As on would expect, "fraud in the inducement of the issuance of a letter of credit is grounds for a court to grant injunctive relief against the payment of such letter of credit to the beneficiary who perpetrated such fraud." *Mid-America Tire, Inc.,* 95 Ohio St. 3d at 376, 395-96, 786 N.E.21d at 628, 644

-9-

(reinstating trial court order so holding). In *Mid-America* the beneficiary of a letter of credit, an export/import company, made false promises and representations concerning the availability for sale of more lucrative summer tires in order to induce the applicant, a tire wholesaler, to purchase a letter of credit securing the purchase of less lucrative winter tires. *Id.* at 368, 786 N.E.2d at 622-23. Based on the exporter's promise to offer a large stock of Michelin summer tires for sale if the wholesaler provided an acceptable letter of credit on a shipment of "grey market" winter tires, the wholesaler delivered the requested letter of credit "convinced that [it] had to open the LC for the winter tires as a show of good faith towards the quarterly acquisition of summer tires and that, upon doing so, [the beneficiary] would honor its end of the bargain." *Id.* at 373, 768 N.E.2d at 626. Upon review of the trial court record, the Supreme Court of Ohio concluded that the letter of credit was being used by the exporter as a vehicle for fraud. It found that, by dangling the summer tires just beyond the reach of the wholesaler the exporter sought to obtain the letter of credit before the wholesaler learned that it had no intention to provide summer tires at the price and quantity represented. It further found that the exporter's conduct effectively deprived the wholesaler of any benefit of the arrangement because the winter tires were of "virtually worthless" and the promised summer tires were never offered for sale on the terms agreed upon.

The same is true here. LBG dangled the prospect of its allowing PCL to continue to perform under a revised work program just beyond PCL's reach in order to induce it to deliver the letter of credit before it learned that LBG had no intention of honoring its promises. Based on Mr. Bailey's representation that LBG remained committed to the contracts, his promise that LBG would fairly evaluate PCL's progress under a revised work program if it delivered the requested security, and his improper threat to declare a default and collect on PCL's bid bonds if

-10-

performance security was not delivered, PCL believed that it had to open the letter of credit, and that upon doing so LBG would honor its end of the bargain. Instead, LBG immediately declared a default, gave no meaningful consideration PCL's revised work program, and terminated the Agreements without ever paying PCL for any of the work that it had performed.

LBG argued in its February 18, 2011 letter to the Court that *Mid-America* is distinguishable from this case because in *Mid-America* the court found that the beneficiary also induced the applicant to enter into the purchase agreement for winter tires and PCL has not made a similar claim that it was fraudulently induced to enter into the construction contract. That distinction is immaterial. The opinion turned on the trial court's determination that the applicant delivered the letter of credit in reliance on the exporter's promise to supply summer tires. Likening the case to those in which a supplier seeks to encash a letter of credit after failing to deliver the goods for which the credit secured payment, the Court found that by failing to deliver the summer tires as promised the exporter "effectively deprived [the wholesaler] of any benefit in the underlying arrangement." *Id.* at 393, 768 N.E.2d at 642. Likewise, in this case PCL and LBG reached an "arrangement" in which LBG promised to fairly review PCL's performance under a revised work program if PCL provided it with the letter of credit. By breaking that promise LBG deprived PCL, who was never paid a dime by LBG, of any benefit of their arrangement. Even if the distinction LBG points to was relevant the holding (which it is not), the facts of this case nonetheless satisfy the "flexible standard" of § 5-109.

LBG also argues (at 15-16) that PCL has failed to state a claim of fraud under New York State common law because it had a pre-existing contractual obligation to provide LBG with performance security. That is wrong for several reasons: *First*, PCL is not asserting a

-11-

common law fraud claim.[3]   *Second*, as discussed above, PCL's obligation to provide performance security had not ripened under the contract.   *Third*, LBG's own case law acknowledges that someone, like LBG, "who makes a contractual promise with the undisclosed intention to breach it can be held liable for fraud."   *Cauble v. Mabon Nugent & Co.*, 594 F. Supp. 985, 993 (S.D.N.Y. 1984).[4]

LBG falsely asserts (at 15) that both this Court and the Hyderabad Court have rejected PCL's § 5-109 claim. As this Court is well aware, it did not reach the merits of PCL's § 5-109 claim when ruling on PCL's order to show cause. As for the Hyderabad Court, after determining that it lacked jurisdiction over the dispute it went on to decide PCL's petition on its merits under Indian law, not § 5-109 and the decisional law defining the scope of the "material fraud" exception that it codifies. Moreover, because the Hyderabad Court found that it lacked jurisdiction over the dispute any findings that it made on the substance of PCL's claim are of no effect under U.S. law. *Hilton v. Guyot*, 159 U.S. 113, 166-67 (1895) ("Every foreign judgment, of whatever nature, in order to be entitled to any effect, must have been rendered by a court having jurisdiction of the cause . . ."). *C.f. Kuriakose v. City of Mount Vernon*, 41 F. Supp. 2d 460, 470 (S.D.N.Y. 1999) (for a judicial finding to have preclusive effect it must have been rendered by a court of competent jurisdiction). Moreover, findings rendered in connection with

---

[3]     The elements of "material fraud" in § 5-109 are significantly different than the elements of common law fraud. *Nostrum Labs.*, 2009 WL 6318144 ("New York cases dealing with fraud in the transaction do not analyze the issue in terms of the elements of common law fraud."); *Emery-Waterhouse Co. v. Rhode Island Hosp. Trust Nat'l Bank*, 757 F.2d 399, 405 (1st Cir. 1985) ("The elements of common law fraud . . . are significantly different from the elements of fraud in the statutory letter-of-credit exception.").[3]   Most notably, under § 5-109 it is not necessary for the applicant to prove that the beneficiary "acted deceitfully or with malicious intent." *Rockwell Int'l Sys., Inc. v. Citibank, N.A.*, 719 F.2d 583, 589 (2d Cir. 1983).

[4]     None of the cases cited by LBG (at 15) support the proposition for which they are cited, that a claim of fraud cannot be based on a party's allegation that it was fraudulently induced to perform a pre-existing contractual obligation, but instead hold that a claim of fraud cannot be based on the alleged fraudster's failure to fulfill its contractual obligations.

-12-

a petition for preliminary injunctive relief and rarely given any preclusive effect. *Don King Productions, Inc. v. Douglas*, 742 F. Supp. 741, 754 (S.D.N.Y. 1990). [5]

**B.     PCL's Interests Will Be Impaired if it is not Permitted to Intervene.**

LBG suggests (at 11) that PCL's interests will not be impaired if intervention denied because it can pursue a claim for damages in the Arbitration. That is plainly wrong. As a practical matter, any payment on the letter of credit ordered by this Court would moot PCL's right to seek injunctive relief under § 5-109. More broadly, accepting LBG's argument would vitiate the protection that § 5-109 is intended to provide as in every case the beneficiary could simply argue that the applicant has a claim for damages. It would effectively force applicants to assume the risk of fraud by the beneficiary, which is precisely what § 5-109 is intended to prevent. Neither of the cases cited by LBG (at 11) is on point, as neither involved claims of fraud and both opinions recognized the fraud exception to the independence principle. *Mennen v. J.P. Morgan & Co.*, 229 A.D.2d 237, 241 (4th Dep't) (noting fraud exception formerly codified in § 5-114 of the U.C.C.); *aff'd*, 91 N.Y.2d 13, 27 (1997) (same); *All Serv. Exportacao, Importacao Comercio, S.A. v. Banco Bamerindus Do Brazil, S.A., New York Branch*, 921 F.2d 32, 35 (2d Cir. 1990) (noting "authorization to enjoin payment" under UCC).

**C.     SBI Does Not Adequately Represent PCL's Interests.**

An intervening party's burden of showing that the representation of its interests may be inadequate "should be treated as minimal." *CBS Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991). Accordingly, in this circuit the "burden of persuasion to demonstrate adequacy

---

[5]     In contrast, the High Court's injunction is entitled to comity. In the letter of credit context, deference is ordinarily given to a foreign injunction where "the underlying transaction is subject to a court proceeding based upon fraud, the beneficiaries of the Letter of Credit are alleged to have been parties to the fraud, and the beneficiaries are demanding immediate payment." *Sabolyk v. Morgan Guaranty Trust Co.*, No. 84 Civ. 3179 (MJL), 1984 WL 1275, at *4 (S.D.N.Y. Nov. 27, 1984). None of the cases cited by LBG (at 18 – 19) is to the contrary, as none involved a proceeding based on fraud.

KL3 2825744.1

of representation falls on the party opposing intervention." *Id.*   LBG cannot meet that burden.

As stated in its memorandum in support of PCL's motion to intervene (at 2), SBI takes "no

position" on whether or not PCL is entitled to relief under § 5-109.   Even if it did, it would not

have standing to assert that claim or knowledge of facts necessary to prove it.   It is clear from

SBI's memorandum that its interest in this litigation is merely "to avoid the danger of conflicting

orders . . . as to whether to pay or not to pay under the letter of credit."   If the High Court lifts

its injunction, there is no reason to believe that SBI would not pay LBG at the first available

opportunity.

**Point III**
**The Court Should Permit PCL to**
**Intervene Pursuant to Fed.R.Civ.P. 24(b)(1)(B)**

Permissive intervention is accorded the broad discretion of the court, and is to be

liberally granted.   *Miller v. Silbermann*, 832 F. Supp. 663, 673 (S.D.N.Y. 1993) (omitting

citations).   In fact, "Rule 24(b)(2)'s provisions are satisfied where a single common question of

law or fact is involved, despite factual differences between the parties."   *Id.* (internal citation and

quotation marks omitted).   PCL's claim raises many common issues of law with the current

action, including:  (a) whether LBG has a right to payment under the letter of credit, (b) whether

the High Court's injunction is entitled to comity, and (c) whether the present action should be

stayed pending arbitration.   LBG's contention (at 18) that it will be prejudiced by PCL's

intervention because the positions that PCL asserts are supposedly contrary to well settled law

obviously begs the question.  As shown in Point II(A)(2), PCL has stated an actionable claim

under § 5-109.

-14-

## Point IV
## Proceedings Should Be Stayed
## <u>Pending Resolution of the Arbitration</u>

LBG does not dispute that proceedings in this action should be stayed pending arbitration if PCL's § 5-109 claim is arbitrable. It simply asserts (at 19) that it never consented to arbitrate disputes concerning the enforceability of the letter of credit. But, that is not true. As noted in PCL's opening brief (at 12), the Federation Internationale Des Ingeniuers-Conseils ("FIDIC") has advised that the arbitration clause contained in the FIDIC contract, Section 67.3, is "wide enough in principal to cover a dispute over a bond" posted as security under the contract.[6] By signing the FIDIC contract LBG agreed to arbitrate disputes concerning the letter of credit. Moreover, LBG successfully argued in the Hyderabad proceedings that the Court lacked subject matter jurisdiction over the letter of credit dispute because it fell within the scope of the arbitration clause. LBG should be judicially estopped from taking the position that it did not agree to arbitrate disputes concerning the enforceability of the letter of credit. *Republic of Ecuador v. Chevron Corp.*, 2005 WL 905118 (2d Cir. Mar. 17, 2011) (principles of judicial estoppel "prevents a party from asserting a factual position . . . clearly inconsistent with a position previously advanced by that party and adopted by . . . the court in some manner.") (citation and internal quotation marks omitted).

LBG also argues (at 22-24) that if PCL's § 5-109 claim is non-arbitrable, a stay pending arbitration would violate the independence principle. That is red herring. Section 5-109 is an exception to the independence principle. PCL's § 5-109 claim must be decided before any

---

[6]    Section 67.3 states in relevant part: "Any dispute . . . shall be finally settled under the rules of the American Arbitration Association. Arbitrations proceedings shall be in English and be held in Morristown, New Jersey, U.S.A. or such other place as is mutually acceptable to both parties." (Taylor Decl. Exh. C at PCL000274). Interpreting 67.3 as encompassing disputes concerning security posted under the FIDIC contract would be consistent with the Second Circuit's instruction that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Haviland v. Goldman, Sachs & Co.*, 947 F.2d 601, 604 (2d Cir. 1991) (citations and internal quotation marks omitted).

KL3 2825744.1

payment is made on the letter of credit whether it is decided by this Court or the arbitration tribunal. LBG does not dispute that all of the most salient legal and factual predicates on which PCL's claim is based will be decided in the Arbitration. Nor does it claim that it would be prejudiced in any way by a stay pending arbitration. LBG has rejected PCL's offers to have its § 5-109 claim decided at the outset of the arbitration; a position that belies any claim that it will be prejudiced by a stay. LBG waited thirteen months before it demanded payment on the letter of credit, and then only did so after PCL commenced arbitration. It clearly has no immediate need for the money. Moreover, after having successfully argued in India that letter of credit disputes fall within the scope of the arbitration clause, LBG should not be heard to claim any prejudice from a stay pending arbitration.

## CONCLUSION

For all of the foregoing reasons, PCL respectfully requests that the Court (a) grant PCL's motion to intervene in this action, and (b) stay proceedings in this action pending resolution of the Arbitration.

Dated: New York, New York
April 15, 2011

Respectfully submitted,

KRAMER LEVIN NAFTALIS
& FRANKEL LLP

By: _____
Gregory A. Horowitz
Joel M. Taylor
Matthew C. Temkin

-16-

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
Email: ghorowitz@kramerlevin.com
Email: jtaylor@kramerlevin.com

*Attorneys for Proposed Intervenor*
*Progressive Constructions Limited*